795 F.2d 466
 Shelley LOW, in the Representative Capacity as Guardian of
the Estate and Person of her Minor Son Brian Vernon Low and
Brian Vernon Low, a Minor, by and through his mother as next
friend and by and through his Guardian, Shelley Low, et al.,
Plaintiffs-Appellees, Cross-Appellants,
v.
UNITED STATES of America, Defendant-Appellant, Cross-Appellee.
 No. 85-1304.
 United States Court of Appeals,
Fifth Circuit.
 July 28, 1986.
Rehearing Denied Aug. 29, 1986.
 
 Mark M. Greenberg, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for defendant-appellant, cross-appellee.
 Charles E. Anderson, Michael R. Milligan, El Paso, Tex., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Western District of Texas.
 Before GEE and HIGGINBOTHAM, Circuit Judges, and HARVEY*, District Judge.
 GEE, Circuit Judge:
 
 
 1
 The government appeals from a $3.5 million judgment for Shelley Low on behalf of her minor son Brian Low. Mrs. Low cross appeals, seeking additional damages. We affirm in part, reverse in part, and remand.I. FACTS AND DISTRICT COURT PROCEEDINGS
 
 
 2
 This is a medical malpractice case brought by Mrs. Shelley Low on behalf of her minor son Brian Low and herself pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sec. 2674 et seq. The alleged malpractice occurred in connection with Brian's delivery at the Naval Regional Medical Center in Orlando, Florida in March 1981. The District Court found that thus far Brian has not been able to "feel or see or hear."
 
 
 3
 Mrs. Low entered the naval hospital at 10:30 p.m. on March 12, 1981. She had broken her water and was having contractions every 15 minutes. By 4:40 a.m. on March 13, her cervix was dilated 5 c.m. (full dilation is 10 c.m.) and the contractions were 3 to 5 minutes apart. At 6:00 a.m., her cervix had not dilated further. Sometime before 7:00 a.m., Dr. Khoury, Mrs. Low's treating physician, ordered an x-ray of her pelvis. The x-ray apparently showed that her pelvis was too small for the baby's head to get through. At 7:00 a.m. Dr. Khoury began to give Mrs. Low pitocin to improve the quantity and quality of her contractions. Thirty minutes later, Khoury told Mrs. Low that she had an arrest of labor and that he was going to perform a C-section. Record entries at 8:45 showed that Brian's heart was depressed. The pitocin therapy stopped at 9:00; it resumed at 9:30. Dr. Khoury was notified at 9:55 that Brian's heart tones were depressed. By 10:30, Mrs. Low was dilated 9 c.m. and the fetal heart tone monitor showed fetal distress after a contraction. At 11:15, Mrs. Low was fully dilated and Brian's head could be seen fully. The attending physicians decided to proceed with vaginal delivery. Using forceps to pull Brian's head, Dr. Khoury and Dr. Julia delivered Brian at 11:36. In the nursery for newborns, the physician on duty noted a probable depressed skull fracture. Brian was then transferred to the neonatal intensive care unit at a local civilian hospital, where he was diagnosed as having a depressed skull fracture of the right parietal occipital area. Several months later, Mrs. Low and Brian moved to El Paso, where Brian received treatment.
 
 
 4
 In February 1983 Mrs. Low filed an administrative claim on Brian's behalf, alleging that the physicians at Brian's birth were negligent for not doing a C-section and for misapplying the forceps during delivery. Representing that Brian suffered from cerebral palsy, from a seizure disorder, from blindness, from deafness, and from mental retardation, she sought $1,275,000 in damages.
 
 
 5
 Mrs. Low filed today's case in December 1983. She alleged negligence and sought damages for Brian and herself totalling $12 million. In November 1984, the district court found for the Lows on liability and, after additional briefing on damages, awarded Brian, through his mother, $3.5 million and ordered that Mrs. Low take nothing.
 
 II. THE GOVERNMENT'S APPEAL
 
 6
 A. Whether the District Court Erred in Finding Negligence Under Florida Law.
 
 
 7
 The district court found that Dr. Khoury was negligent for failure to perform the C-section and expressly rejected Mrs. Low's alternative argument that the forceps were the producing cause of Brian's disability. More specifically, the court found
 
 
 8
 that Dr. Khoury had an early recognition of a potential problem in delivery, as indicative of his notations and conversations with the Plaintiff. He knew as early as 7:30 in the morning that there was a high potential for a "C" section, had conversations with the Plaintiff, and he knew the reasons why a "C" section would be required. The Court finds that Dr. Khoury was faced with a situation that placed on him a duty to take measures other than vaginal delivery at 9:55. He had actual knowledge of the very thing that he had anticipated. The Court finds that he did violate the standard by inaction. Therefore, the Court will enter judgment for the Plaintiff in this case on the question of liability.
 
 
 9
 The government contends that the district court erred in finding negligence because, under Florida statutory law, there was no admissible evidence of the accepted standard of care for an allegedly negligent health care provider. The government bases this argument on the Florida Medical Practice Act, which defines the
 
 
 10
 prevailing professional standard of care for a given health care provider [to be] that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
 
 
 11
 Fla.Stat. Sec. 768.45(1) (emphasis added). The government points out that the only testimony to the court on negligence in failing to perform the C-section came from Dr. Troupin, an M.D. and professor of neurology in Los Angeles. But, according to the government, as a neurologist, Dr. Troupin does not come within any of the statutory definitions of a similar health care provider in a matter concerning obstetrical negligence. Hence, absent any evidence of the acceptable standard of care, the government contends that the district court had no basis for its finding of negligence.
 
 
 12
 Mrs. Low argues that, regardless of this issue's merit, we cannot address it because the government failed to object to this portion of Dr. Troupin's testimony. The government replies that it does not object because Dr. Troupin's testimony was relevant to the fact issue of whether Brian's brain damage was due to oxygen deprivation. We must agree with Mrs. Low. Dr. Troupin's testimony went beyond the neurological explanation for Brian's injury; Dr. Troupin testified that a timely cesarean would have likely avoided Brian's injury.[1] The government did not object to or otherwise seek to limit the court's consideration of this testimony. The government is therefore barred from appealing on this issue. Fed.R.Civ.P. 46; Jenkins v. General Motors Corp., 446 F.2d 377, 383 (5th Cir.1971), cert. denied, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972).
 
 
 13
 B. Whether the District Court Erred in Awarding Damages Exceeding What Mrs. Low Initially Sought in Her Administrative Claim.
 
 
 14
 The government also contends on appeal that the district court erred in awarding damages exceeding the amount sought in Mrs. Low's administrative claim. As we observed above, the claim was for $1,275,000; the district court awarded $3.5 million. The government asserts that although an amount exceeding that specified in an administrative claim can be awarded if "it is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim," 28 U.S.C. Sec. 2675(b), such is not the case here. The government discounts Mrs. Low's testimony that her prayer increased to $12 million because, at the time she filed the administrative claim, "we did not know what Brian would be able to do because the doctors were unable to tell us." Because this was allegedly the only testimony on intervening events, the government challenges the district court's finding that
 
 
 15
 [t]he facts available at the time of filing of the administrative claim did not include and could not have included facts discovered since that time concerning the extent of Brian Low's condition, the prospects for any recovery, the limited extent of any prospective recovery, and the life expectancy of the child.
 
 
 16
 Mrs. Low responds to the government's assertion by arguing that at the time the administrative claim was filed, when Brian was not yet two years old, "it was certainly too early for [her] to know a final prediction of Brian's development and extent of damages and injuries...." Mrs. Low contends that at the time she filed the administrative claim she did not know, for example, if Brian would ever go to school, walk, feed himself, make any developmental progress, or even respond to pain. Nor did she know how long he would live. She maintains that when the administrative claim was filed the physicians disagreed about the severity of Brian's injuries; a clear trend would not be particularly discernible until he was four or five, but limitations provisions required that the claim be filed when it was. The government replies that the only undiscoverable facts were the specifics of Brian's disability; Mrs. Low knew the "global extent of Brian Low's physical and mental deficiencies" when she filed the administrative claim.
 
 
 17
 The questions before us on this issue are two-fold. First, did the district court err in finding that post-claim evidence of the extent of Brian's condition, the prospects for his recovery, the limited extent of any recovery, and of his life expectancy could not have been discovered at the time Mrs. Low filed the administrative claim? Second, do these facts represent newly discovered evidence or intervening facts for purposes of 28 U.S.C. Sec. 2675(b)? With respect to the first question, the standard of review is whether the district court's findings are clearly erroneous. Ferrero v. United States, 603 F.2d 510, 512 (5th Cir.1979); Chesser v. United States, 387 F.2d 119, 120 (5th Cir.1967). We conclude on our review of the record that the district court's findings on the extent of Brian's condition, his prospects for recovery, and the limited extent of any recovery are not clearly erroneous. The testimony of Dr. Gold, who treated Brian from October 1981 through June 1982, makes clear that it is not until a child such as Brian is four or five that there is sufficient evidence of developmental trend to support a prediction on these matters. And, because Brian's level of activity will affect his life expectancy, we conclude that the district court's finding on life expectancy is not clearly erroneous.
 
 
 18
 With respect to the second question, for these considerations to constitute newly discovered evidence or intervening facts for purposes of 28 U.S.C. Sec. 2675(b), several requirements must be satisfied. First, the evidence must support the increase in the prayer over the administrative claim. 28 U.S.C. Sec. 2675(b). Next, the allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed. O'Rourke v. Eastern Airlines, Inc., 730 F.2d 842, 856 (2d Cir.1984); Williams By Williams v. United States, 608 F.Supp. 269, 273 (S.D.Fla.1985). That is, while courts do not charge a claimant with knowing that the physicians could not tell him, Fraysier v. United States, 766 F.2d 478, 481 (11th Cir.1985), the information must not have been discoverable through the exercise of reasonable diligence. Hence, we have allowed an increase over the amount administratively claimed when, at the time the claim was filed, the claimant did not know and could not have ascertained that an injury would not heal without surgery. United States v. Alexander, 238 F.2d 314, 317-18 (5th Cir.1956). An increase has likewise been allowed when the specialists on whom the claimant reasonably relied could not reasonably have known the true nature or extent of the claimant's illness. Fraysier v. United States, 766 F.2d at 480. These various requirements are consistent with our recent observations on the policy underlying 28 U.S.C. Sec. 2675(b). In Martinez v. United States, 780 F.2d 525, 530 (5th Cir.1986), we noted that "[t]he manifest purpose of the sum certain requirements of Sec. 2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability." Section 2675 should be interpreted so that "[t]he government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settlement decisions." Id.
 
 
 19
 Based on the law and policy that must guide our analysis, we conclude that the district court erred in determining that several specific facts were sufficient to justify an increase in the amount that could be awarded to Brian. The administrative claim that Mrs. Low filed in February 1983, represents that "Brian ... has cerebral palsy, seizure disorder, blindness, deafness and mental retardation." The evidence that the district court concluded was undiscoverable at the time the claim was filed addresses the precision with which the severity of Brian's condition could be known. The evidence does not alter the fact, however, that when the administrative claim was filed Mrs. Low already knew that Brian had cerebral palsy, a seizure disorder, and was blind, deaf, and mentally retarded. There is no evidence that these conditions became worse or that other conditions developed after the claim was filed. Nor do we find any evidence to suggest that before the claim was filed Mrs. Low had reason to think that Brian would not live to be an adult. This is not a case in which the claimant did not know or reasonably could not have known the basic severity of Brian's handicap: it was indubitably of grave severity and of unknown--perhaps permanent--duration. The evidence that the district court relied on and that to which Mrs. Low points bears on the precision of Brian's prognosis. But if the exact nature, extent and duration of each recognized disability must be known before Sec. 2675(b) will be given effect, that section will be rendered useless; and the government will be unable to evaluate any claim made against it without the threat that, if it does not settle, its liability may increase substantially. Such matters are of their nature dubious, partaking of the uncertainties of life itself in which unexpected deaths and equally unexpected recoveries occur. It cannot be gainsaid, however, that by the time her claim was filed, Mrs. Low knew that the worst-case prognosis for Brian was one of great severity. Indeed, her administrative claim is scarcely a paltry one, the sum sought being one capable of producing an interest return substantially in excess of one hundred thousand dollars per annum at rates current when the claim was made. For these reasons, we reverse the district court's conclusion that an award exceeding $1,275,000 could be given by it.
 
 
 20
 C. Whether There Was Sufficient Evidence of Damages.
 
 
 21
 The last issue that the government raises is whether there was sufficient evidence of Brian's damages to justify a $3.5 million judgment for future medical expenses. Given our immediately preceding analysis, we must now consider whether the evidence was sufficient to justify a judgment for $1,275,000. The clearly erroneous standard governs our review of factual determinations on damages in FTCA cases. Fed.R.Civ.P. 52(a); Ferrero v. United States, 603 F.2d 510, 512 (5th Cir.1979). According to the standard, we may not reverse the findings of a trial judge unless our review of the relevant evidence leaves us with a definite and firm conviction that a mistake has been committed. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985).
 
 
 22
 Our review of the record convinces us that no mistake was made; there is sufficient evidence to support an award of $1,275,000. The parties stipulated before trial that Brian would live into adulthood, possibly beyond age 50. Dr. Troupin testified that Brian would need 24-hour care, physical and occupational therapy, sophisticated ancillary personnel attention, a long-term care program, and special equipment. Dr. Dillman, a business professor, testified that 24-hour a day home health care for Brian until age 53 would cost about $4.5 million. This evidence is therefore sufficient to support an award of $1,276,000.
 
 III. MRS. LOW'S APPEAL
 
 23
 On cross-appeal, Mrs. Low contends that the district court erred in not awarding damages to Brian for lost earnings, pain and suffering, mental anguish, and loss of enjoyment of life. Because the maximum award here is $1,275,000 and the evidence on future medical expenses supports that award, we decline to consider whether additional damages should have been given.
 
 IV. CONCLUSION
 
 24
 The district court's order of judgment is AFFIRMED IN PART, REVERSED IN PART, and REMANDED. On remand, the district court is instructed to reduce Brian Low's damage award from $3.5 million to $1,275,000.
 
 
 
 *
 District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The following exchange occurred between plaintiff's counsel and Dr. Troupin:
 Q. At this point in time, with this information that was available to these doctors, if they had abandoned vaginal delivery attempt and had removed the baby surgically, would that have saved the damage that has occurred here?
 A. I'm not sure which point in time you refer to.
 Q. Well, at the point in time when it became obvious there was arrest of labor, that there was cephalopelvic disproportion and the baby's head is engaged.
 A. At the point there is a very high likelihood that a cesarean section would have avoided all of these problems.
 Q. Did there appear to be sufficient time available to these doctors to make that decision and act on it?
 A. I would think so. They seemed to be discussing it, from the comments in the chart for a couple of hours. They certainly had time to go ahead and do it.
 Deposition of Allan S. Troupin, M.D., Plaintiffs' Exhibit 7 at 30-31.