**Kenneth RICHARDSON,**
**Plaintiff–Appellee/Cross–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellant/Cross–Appellee.**

**Norman J. TRAPP, Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

**Nos. 86–4095, 86–4119 and 86–4106.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1988.

Decided March 14, 1988.

---

Frank A. Wilson, Assistant U.S. Atty., Spokane, Wash., and Robert L. Jones, Attorney-Advisor, Bonneville Power Administration, for defendant-appellant.

David E. Williams, Critchlow & Williams, Richland, Wash., for plaintiff-appellee Richardson.

Gregg L. Tinker and Nicholas Wagner, Longfelder, Tinker, Kidman & Flora, Seattle, Wash., for plaintiff-appellee Trapp.

Before WRIGHT, ALARCON, and POOLE, Circuit Judges.

POOLE, Circuit Judge:

These Federal Tort Claims Act cases arise out of an accident in which plaintiffs were severely burned by electricity from power lines owned and operated by the Bonneville Power Administration (BPA), a federal agency. In a prior appeal, this

Court reversed a judgment in favor of the government, holding that the trial judge had applied the wrong standard of care. *Richardson v. United States*, 645 F.2d 731 (9th Cir.1981) (*Richardson I*). Plaintiffs prevailed on retrial and the government appeals, claiming that the district judge erroneously believed himself bound by the law of the case despite a conflicting intervening decision of the Washington Court of Appeals. We agree that the district court was in error, and accordingly, we must again reverse.

## I

On May 10, 1975, plaintiffs Kenneth Richardson and Norman Trapp were moving aluminum irrigation pipes on the farm that Trapp was renting. Suspended above one part of the farm were three power transmission lines owned and operated by the BPA. At the point where the plaintiffs were working, the lines are 30 feet above the ground.

At the time of the accident, plaintiffs were each carrying one end of a 40–foot length of pipe, and Trapp was dragging a 20–foot length of pipe behind him, resting the shorter pipe on the longer one. As they passed underneath the power lines, plaintiffs suddenly received a high-voltage charge of electricity. Both were knocked unconscious and suffered severe and permanent injuries.

The plaintiffs contend that lightning simultaneously struck the line and the pipe, causing a short circuit from the line to the pipe.[1] The government contends that the plaintiffs raised the pipe into the air high enough to touch or come into close proximity to the power line.

Plaintiffs filed separate suits under the Federal Tort Claims Act.[2] Richardson's

suit was tried before Judge Marshall Neill in 1978. Judge Neill found that the accident had been caused by lightning striking the power lines, causing a midpoint flashover, but he concluded that the probability of a midpoint flashover was extremely remote and that the BPA had not been negligent. In *Richardson I*, this court reversed and remanded for a new trial, holding that the trial judge had applied the wrong standard of care under Washington law. 645 F.2d at 735.

On remand, Trapp's suit was transferred to the Eastern District and the two cases were consolidated. The liability issue was tried before Judge McNichols in March 1983. Before the judge had ruled, the Court of Appeals of Washington issued an opinion criticizing *Richardson I* as an incorrect interpretation of Washington law. *See Keegan v. Grant County PUD*, 34 Wash.App. 274, 661 P.2d 146 (1983). In his Memorandum and Order of June 30, 1983, Judge McNichols held that he was bound by the law of the case and found the defendant liable, but he certified the standard of care issue for interlocutory appeal under 28 U.S.C. § 1292(b). However, the Petition for Interlocutory Appeal was filed two days late and was dismissed.[3] The trial court denied recertification.

The issue of damages was tried before Judge McNichols on October 31 and November 1, 1984. The judge issued his memorandum decision on February 10, 1986, finding the U.S. liable to Richardson for $1,093,094[4] and to Trapp for $849,891. In a Supplemental Decision on June 11, 1986, the court noted that Richardson's administrative claim had been in the amount of $950,000. Finding no changed circumstances justifying the greater amount, as

1. This phenomenon of electricity travelling through the air from a high-voltage power line to the ground is known as a "midpoint flash carryover" or a "midpoint flashover."

2. Both plaintiffs complied with the jurisdictional requirement of filing an administrative claim with the BPA. 28 U.S.C. § 2675.

3. The failure to take an authorized appeal from an interlocutory order does not preclude a party

from raising the question on appeal from the final judgment. *Baldwin v. Redwood City*, 540 F.2d 1360, 1364 (9th Cir.1976), *cert. denied sub nom. Leipzig v. Baldwin*, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

4. Both parties agree that the trial judge made a mathematical error and that the actual sum of the elements of damage awarded was $1,293,-094.

required by 28 U.S.C. § 2675(b), the judge reduced Richardson's award to the amount of the claim.

## II

*Nos. 86-4095/86-4106*

The dispositive issue in these appeals is whether the district court erred in applying the standard of care dictated by *Richardson I* despite the intervening decision of the Washington Court of Appeals in *Keegan*. This is a legal question which we review *de novo*. *Louie v. United States*, 776 F.2d 819, 822 (9th Cir.1985); *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978).

### A.

■ Under the "law of the case" doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case. *See United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). There is a well-established exception, however, which allows reexamination when "controlling authority has made a contrary decision of law applicable to such issues." *Kimball*, 590 F.2d at 771–72. Applying this exception, federal courts have uniformly held that an intervening decision of the highest state court in a case governed by state law is grounds for reconsidering the law of the case. *See, e.g., Messenger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912); *Robinson v. Volkswagen of America, Inc.*, 803 F.2d 572, 574 (10th Cir.1986); *Reid v. Volkswagen of America, Inc.*, 575 F.2d 1175, 1176 (6th Cir.1978); *cf. Handi Investment Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392–93 (9th Cir.1981) (distinguishing intervening decision of California Supreme Court).

■ We believe that the exception has equal application where there has been a dispositive intervening decision of an intermediate appellate state court. The Su-

preme Court has held, under the *Erie* doctrine, that a federal court sitting in diversity must follow an intermediate state court decision unless other persuasive authority convinces the federal court that the state supreme court would decide otherwise. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *see also Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir.1982) (choosing between conflicting intermediate state court decisions on the merits). It is undisputed that liability under the Federal Tort Claims Act is determined by the law of the state where the act or omission complained of occurred. *See generally* 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States*, 369 U.S. 1, 6–9, 82 S.Ct. 585, 589–90, 7 L.Ed.2d 492 (1962).

Our research discloses only one reported decision addressing the precise situation presented here. In *Delano v. Kitch*, 663 F.2d 990 (10th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982), the district court refused to reconsider an issue of Kansas law decided on a prior appeal notwithstanding the intervening decision of the Kansas Court of Appeals. The Tenth Circuit, relying on *West*, held that the district court erred in not reconsidering the issue. 663 F.2d at 995–96. We agree with the rationale and the result reached by the Tenth Circuit. Accordingly, we hold that the district court should have reexamined the controlling state law in the light of the intervening state-court decision which specifically cast doubt upon this court's prior ruling.

Since such questions are before us *de novo*, our holding in *Richardson I* is open for reconsideration, and we now reexamine Washington law in the light shed by *Keegan* to determine whether the trial court's application of *Richardson I* prejudiced the defendant. *Delano v. Kitch, supra*, 663 F.2d at 996; *see also Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941) (under *Erie*, a federal appellate court must apply state law as it exists at the time of the appeal, rather than at the time of the trial).

### B.

In *Richardson I*, this court held that the standard of care imposed on a power transmission line owner or operator under Washington law was "the highest degree of care that human prudence is equal to." 645 F.2d at 732–35, *citing Vannoy v. Pacific Power & Light Co.*, 59 Wash.2d 623, 369 P.2d 848 (1962). Admittedly, the "confusing evolution" of the standard made the question difficult, but we concluded that the state standard applied in the first trial, the "highest degree of care compatible with practical operation,"[5] was inconsistent with and had been supplanted by the *Vannoy* standard. We reasoned that the former standard "allows expense and efficiency to balance more heavily against the risk involved than would be allowed under the [*Vannoy*] standard," 645 F.2d at 735, and that "the proper expense-benefit ration would be different where practicality is not taken into consideration," *id.* at 734–35.

Subsequent to the consolidated trial on remand, the Washington Court of Appeals decided *Keegan*. In that opinion, the court held that the "compatible with practical operation" language was *not* inconsistent with the *Vannoy* standard, and it specifically disapproved *Richardson I*:

> We do not agree with the Ninth Circuit's analysis. The omission in recent Washington cases of the entire standard of care statement from *Scott* should not be construed as a revocation of the "practical operation of the utility" from consideration by the trier of fact. A consideration of the practical operation of the utility is intrinsically included in any analysis of whether the utility exercised due care.

661 P.2d at 150 n. 2. The *Keegan* court explained that the extent to which a utility would be allowed to present evidence relating to its "practical operation" varied under the circumstances of each case:

> A sliding scale proportional to that utilized for the standard of care should be used. If the danger posed to the public is minimal, then the utility should be afforded considerable latitude in presenting evidence of its practical operation. If the danger is lethal, then the practical operation becomes minimally relevant. The relevancy of evidence pertaining to the practical operation of the utility ultimately lies in the sound discretion of the trial court.

*Id.* 661 P.2d at 150.

In his June 30, 1983 Memorandum, Judge McNichols concluded that he was bound by *Richardson I*, especially since he had conducted the second trial "under the premise that evidence relating to the practical operation of the utility is irrelevant." Consequently, in his final decision, he applied the Ninth Circuit's interpretation that "every means known, or which with reasonable inquiry would have been known, [must] be used to prevent death or injury in these circumstances." *Richardson I*, 645 F.2d at 735. Attempting to harmonize his holding with *Keegan*, he stated that "it is arguable that the Ninth Circuit and the Washington State Court of Appeals are saying basically the same thing in different words."

Despite the judge's valiant effort in the midst of conflicting authorities to reconcile *Keegan* with *Richardson I*, it is clear that the two cases are incompatible. The trial judge interpreted *Richardson I* as excluding *any* consideration of the practical operation of the utility, whereas under *Keegan*, practical operation is still at least "minimally relevant." The jury instruction approved in *Keegan* ("the highest degree of care, the utmost care and prudence, consistent with the practical operation of Defendant's electrical distribution facilities") is very similar to the standard struck down in *Richardson I* ("the highest degree of care compatible with practical operation").

In his opposition brief, Trapp cites *Brashear v. Puget Sound Power & Light Co.*, 100 Wash.2d 204, 667 P.2d 78 (1983), and argues that the Washington Supreme Court's latest enunciation of the *Vannoy*

---

5. The phrase "consistent with practical operation" was used in an earlier Washington case, *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P.2d 749 (1934), on which *Vannoy* was based.

standard demonstrates that *Keegan* is dictum and is not valid precedent. We disagree. *Brashear* did not concern the question whether evidence of practical operation was relevant under the *Vannoy* standard; it held only that the highest degree of prudence was *not* required where the voltage was of a low level such as that ordinarily found in homes. 667 P.2d at 82.[6] The opinion cites *Keegan* in support of the *Vannoy* standard, and it gives no indication that the court disapproved of *Keegan* in any way. The opinion does not cite *Richardson I*.[7] Under these circumstances, we believe that *Keegan* is valid precedent which a state trial court would be bound to follow, and we therefore decline Trapp's invitation to disregard it.

As to whether the district court's error prejudiced the defendant, we recognize that it is at least arguable that the BPA was able to present much or all of the evidence that would be considered relevant under *Keegan*'s "minimally relevant" standard.[8] The *Keegan* court itself noted that the trial judge has broad discretion to limit the evidence regarding "practical operation":

> Evidence concerning the utility's practical operation addresses whether the utility has conducted its operations under the known safety methods and the present state of the art.... The admissibility of evidence relating to the practical operation of the utility is not an open door for the utility to argue the economic impact of safety measures on the ratepayers. The fact the requisite care is expensive or inconvenient does not, of itself, relieve the utility of its duty to exercise commensurate care.

\*     \*     \*     \*     \*     \*

The trial court exercised its discretion and limited the PUD's presentation of evidence pertaining to its practical operation to matters directly affecting the Keegan fire. The PUD was not allowed to present testimony of its overall operation and economics and testimony of tree-trimming practices was limited to those applicable to the trees on or near the Keegan property.... The trial court's ruling limited, but did not preclude, the PUD from presenting the practical aspect of its operation to the jury. We hold there was no abuse of discretion.

661 P.2d at 150, 151 (citations omitted). However, we need not decide whether any specific evidence was improperly excluded. Even if the government was not prejudiced from an evidentiary standpoint, the district court might have come to a different conclusion under the *Keegan* standard. It is clear from the trial judge's remarks that he was troubled by *Richardson*'s command to disregard the "practical operation" of the utility. See Memorandum of June 30, 1983 at 2 ("I find myself attempting to apply a rule which I cannot define."). We have no doubt that his concern to adhere to our prior ruling entered into his ultimate determination regarding liability. We must therefore remand for a new trial.[9]

### III

*No. 86-4119*

In his cross-appeal, Richardson challenges the supplemental decision reducing his damage award from $1.29 million to $950,000. Although this issue is potentially mooted by our reversal on liability, it may arise again if Richardson should prevail on remand. Accordingly, we will address the issue.

---

**6.** It is undisputed that the voltage involved here is potentially lethal.

**7.** *Richardson I* was cited in support of the *Vannoy* standard in one intervening appellate case, *Estate of Celiz v. PUD*, 30 Wash.App. 682, 638 P.2d 588, 591 n. 2 (1981), but, as in *Brashear*, no discussion of evidence of practical operation was involved.

**8.** One of the difficulties is that *Richardson I*, unlike *Keegan*, did not attempt to define what it meant by "practical operation."

**9.** We recognize that Richardson's original trial was conducted under a standard which we now hold to be proper under Washington law. However, while it is our duty to decide this appeal in accordance with the law as it now exists, we cannot reinstate the original judgment in Richardson's case which was rendered a nullity by the prior decision of this court. Consequently, Richardson's case must be remanded along with Trapp's for a new trial.

Richardson's original complaint, like his administrative claim, prayed for damages in the amount of $950,000. After the trial court's decision, the government pointed out the conflict between the award and the claim, citing 28 U.S.C. § 2675(b), which provides:

Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

In response, Richardson moved to amend his complaint to conform to the proof adduced at trial, alleging that the amputation of his leg and the resulting psychological problems constituted intervening facts that were not reasonably discoverable on July 5, 1975, the date the administrative claim was filed.

In its Supplemental Memorandum Decision of June 11, 1986, the district court denied Richardson's motion to amend his complaint, finding:

The amputation of the leg occurred prior to the commencement of the action; the record is not clear as to when the alleged psychological injuries resulted. It is clear, however, that they all took place prior to the trial.

The judge therefore limited Richardson's recovery to the amount of his claim.

We believe the trial court misapprehended the nature of the findings required by § 2675(b). The trial court believed that Richardson was barred from seeking a greater amount because the alleged intervening facts had occurred prior to *trial.* However, on its face § 2675(b) requires only that newly discovered evidence must have come to light after the date of the *claim,* and other courts have held that intervening facts should be treated likewise. *See Low v. United States,* 795 F.2d 466, 470 (5th Cir.1986) ("the allegedly newly discovered evidence or intervening facts must not have been reasonable capable of

detection at the time the administrative claim was filed"); *Husovsky v. United States,* 590 F.2d 944, 954 (D.C.Cir.1978) ("... unless during the time between the filing of the administrative claim and the filing of the lawsuit there are intervening facts or newly discovered evidence.").

Here, it is not disputed that the amputation and the psychological disorder occurred after the claim was filed. However, the parties do dispute whether these injuries were reasonably foreseeable at the time the original claim was filed. Thus, if Richardson should prevail on remand, the district court should determine whether the full extent of Richardson's injuries was reasonably foreseeable as of July 5, 1975. *Compare Powers v. United States,* 589 F.Supp. 1084, 1109–10 (D.Conn.1984) (although plaintiff's claim alleged a general postoperative paralysis, increasing degree of paralysis, worsening pain and unanticipated need for extensive nursing care constituted intervening facts) *and McDonald v. United States,* 555 F.Supp. 935, 957–61 (M.D.Pa.1983) (changes in plaintiff's physical and emotional condition constituted newly discovered evidence) *with Low,* 795 F.2d at 471 ("There is no evidence that these conditions became worse or that other conditions developed after the claim was filed") *and Kielwien v. United States,* 540 F.2d 676, 680 (4th Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976) ("[The] diagnoses and advice were thus cumulative and confirmatory of what plaintiff had largely already been told").

■ As to whether Richardson should be allowed to amend his complaint at this late date, we note that under either Rule 15(a) or Rule 15(b) of the Federal Rules of Civil Procedure, leave to amend should be "freely granted" where the opposing party will not be prejudiced thereby. A mere passage of time, by itself, is insufficient; rather, there must be an affirmative showing of either prejudice or bad faith. *Islamic Republic of Iran v. Boeing Co.,* 771 F.2d 1279, 1287 (9th Cir.1985), *cert. dismissed,* — U.S. —, 107 S.Ct. 450, 93 L.Ed.2d 397 (1986) (two-year delay insufficient); *Howey v. United States,* 481 F.2d 1187, 1190–91

(9th Cir.1973) (five-year delay insufficient). Accordingly, on remand the district court should determine whether the government would be prejudiced by allowing the amendment.

### IV

We regret that this already protracted litigation must be further prolonged by this remand, but we see no other choice. In a case governed by state law, a federal court is not free to disregard an intervening decision of a state appellate court, even if it requires a reexamination of the law of the case. We therefore reverse and remand for a new trial.

REVERSED AND REMANDED.