**Elisa SALCEDO–ALBANEZ, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 00–CV–1999 W (BEN).**

United States District Court, S.D. California.

May 23, 2001.

David Gutierrez, San Diego, CA, for Plaintiff.

Timothy C. Stutler, Asst. United States Attorney, San Diego, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO AMEND

WHELAN, District Judge.

Plaintiff Elisa Salcedo–Albanez ("Plaintiff") moves to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure. Defendant the United States of America ("United States") opposes. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1).

### I. BACKGROUND

On October 11, 1998 Plaintiff was involved in a car accident with a United

States Border Patrol vehicle on Highway SR–98. (*See Pl.'s Compl.* at 2.) Sometime thereafter, Plaintiff visited Dr. Carlos Ibarra de la Toba ("Dr.Toba") who told Plaintiff she had dislocated her right intraocular lens implant and that pressure in her right eye was elevated (glaucoma). (*See Decl. of Dr. Cesar T. Chavez* at 11.) Plaintiff alleges the accident caused her lens dislocation and additional eye pressure. (*See Pl.'s Mem. of P. & A.* at 6.)

On November 19, 1998 Dr. Toba performed surgery to reposition Plaintiff's dislodged lens and gave her medicated eye drops for the pressure. (*See Decl. of Dr. Cesar T. Chavez* at 11.) On March 18, 1999 Dr. Toba continued Plaintiff's eye medication to control her intraocular pressure and cautioned "[t]o do otherwise [would] run the risk of permanent damage to the optical nerve." (*Def.'s Opp'n Ex. A.*) On August 11, 1999 Dr. Toba concluded that Plaintiff's medication was not adequately controlling her intraocular pressure and stated that "traveculaplastia surgery is required for better control." (*Def.'s Opp'n Ex. B.*)

On October 12, 1999 Plaintiff, represented by counsel, presented a $75,000 administrative claim to the Immigration and Naturalization Service ("INS") for damages arising from the accident. (*See Def.'s Opp'n Ex. C.*) Plaintiff sought $75,000 for personal injuries. (*See id.*) The INS took no action to deny Plaintiff's administrative claim within 6 months and thus the claim could be considered denied at the "option of the claimant" on April 12, 2000 or anytime thereafter pursuant to 28 U.S.C. § 2675 et seq.[1]

On January 27, 2000 Dr. Cesar T. Chavez ("Dr.Chavez") medically examined Plaintiff. Plaintiff's visit with Dr. Chavez occurred about four months after Plaintiff filed her original administrative complaint. Dr. Chavez informed Plaintiff that in his opinion, "she would permanently lose the vision in her right eye due to the constant and prolonged pressure on her right optic nerve." (*Pl.'s Mem. of P. & A.* at 6.) Regardless, Plaintiff never sought to amend her original $75,000 administrative claim.[2]

On October 6, 2000, approximately two years after the accident, Plaintiff initiated this action against the United States seeking damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680 (the "FTCA"). Another six months passed before Plaintiff sought to amend the pleadings. Plaintiff, alleging more extensive eye injuries, now moves to file a First Amended Complaint seeking $500,000 in damages. Having read and considered the parties' moving papers, all exhibits and the applicable law, the Court **DENIES** Plaintiff's motion for the reasons expressed below.

---

1. Indeed, the INS did not officially deny Plaintiff's administrative claim until it answered the Complaint in this action on January 10, 2001.

2. Plaintiff contends she amended her administrative claim by submitting a demand letter dated July 31, 2000 to opposing counsel. (*Pl.'s Reply* at 3–4; *Ex. J.*) In the demand letter, Plaintiff's counsel stated he was authorized to settle the case for $500,000. Plaintiff's counsel also asserted that Plaintiff "will recover at least $1,000,000 if this case goes to trial." (*Pl.'s Reply Ex. J.*) However, Plaintiff cites no authority for the proposition that a demand letter to opposing counsel constitutes an amendment to Plaintiff's administrative claim. Indeed, there is no evidence that the INS or Plaintiff ever considered Plaintiff's demand letter to be an official amendment to her original administrative claim. Plaintiff's demand letter is nothing more than what it purports to be—an authorization to settle the case for $500,000. In sum, the Court rejects Plaintiff's attempt to rely on this prior settlement discourse as a means to establish a viable amendment.

## II. LEGAL STANDARD

The United States, as sovereign, is immune from suit except to the extent that it consents to be sued. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The terms of the sovereign's consent define a court's jurisdiction. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Any waiver of sovereign immunity must be unequivocally expressed. *See Hutchinson v. United States,* 677 F.2d 1322, 1327 (9th Cir.1982). Moreover, "[t]he party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity." *Holloman v. Watt,* 708 F.2d 1399, 1401 (9th Cir.1983).

It is well-settled that the FTCA (28 U.S.C. §§ 1346, 2671–2680) provides the exclusive statutory remedy for torts committed by employees of the United States who act within the scope of their employment, that the United States is the only proper defendant in an action under the FTCA and that a plaintiff may not file suit under the FTCA unless he first exhausts his administrative remedies under the FTCA. *See id.* Under the FTCA, a claim for damages filed in district court may not exceed the amount sought in the underlying administrative claim filed with the appropriate federal agency. *See* 28 U.S.C. § 2675(b).

Statutes involving "the Government's consent to be sued must be construed strictly in favor of the sovereign and not enlarge[d] ... beyond what the language requires." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (citations omitted). By its own terms, the FTCA bars actions for damages in excess of the administrative claim in all but two circumstances: (1) where the plaintiff proves "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or (2) where the plaintiff identifies and proves "intervening facts" justifying a higher award. 28 U.S.C. § 2675(b); *Lowry v. United States,* 958 F.Supp. 704, 711 (D.Mass.1997). While a plaintiff may seek a larger amount if he meets either of these tests, the burden of proof under both falls on the plaintiff. *See id.; Spivey v. United States,* 912 F.2d 80, 85 (4th Cir.1990) ("Plaintiffs bear the burden of proving that they are entitled to damages in excess of their administrative claim.") (citation omitted).

In determining whether the exception is available, the FTCA does not hold claimants to a standard that charges them with "knowing what the doctors could not tell [them]." *Fraysier v. United States,* 766 F.2d 478, 481 (11th Cir.1985). "[W]hether the plaintiff is seeking an increase under the rubric of 'newly discovered evidence' or 'intervening facts,' one of the key issues is foreseeability. If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed. On the other hand, if it was not ... [then] an increase may be allowed." *Lowry,* 958 F.Supp. at 711. Moreover, in determining whether a plaintiff satisfies one of the two exceptions to the FTCA, courts apply an objective standard. *See Michels v. United States,* 31 F.3d 686, 689 (8th Cir.1994); *Richardson v. United States,* 841 F.2d 993, 999 (9th Cir.1988) (remanding matter to district court to determine whether injuries were "reasonably foreseeable" at the time plaintiff filed his administrative claim).

## III. ANALYSIS

Plaintiff claims she was unaware of her severe eye condition when she filed her $75,000 administrative claim and should now be permitted to increase it to $500,000. Specifically, Plaintiff alleges

that she "did not know nor was it reasonably discoverable by her that her intraocular pressure would continue to increase in spite of the medication, and that she would permanently lose the vision in her right eye due to the constant and prolonged pressure on her right optic nerve." (*Pl.'s Mem. of P. & A.* at 6.) Plaintiff argues that because she was unaware of her total right eye vision loss at the time she filed her administrative claim, this constitutes "newly discovered evidence" and the Court should permit Plaintiff to increase her damages claim to $500,000. (*Id.*)

The Court disagrees.

Here, Plaintiff fails to explain why it was not reasonably foreseeable that her injuries would flourish into their present condition. In March 1999, seven months before Plaintiff filed her administrative claim, Plaintiff's ophthalmologist, Dr. Toba expressly warned Plaintiff that the intraocular pressure in her right eye presented a "risk of permanent damage to the optical nerve" in the absence of medical care. (*Def.'s Opp'n Ex. A.*) Dr. Toba then attempted to treat the problem with medication. In August 1999, still two months before Plaintiff's administrative claim, Dr. Toba stated that the medication was not controlling the intraocular pressure and concluded that "traveculaplastia surgery is required for better control." (*Def.'s Opp'n Ex. B.*) Plaintiff independently elected to postpone the surgery.

On October 12, 1999 Plaintiff officially filed her $75,000 administrative claim equipped with Dr. Toba's prior warnings regarding the risk of permanent damage to her optical nerve. On January 27, 2000, approximately four months after Plaintiff flied her claim, Plaintiff sought the opinion of another doctor—Dr. Chavez. Unfortunately, exactly as Dr. Toba had cautioned,

Dr. Chavez told Plaintiff her right eye optical nerve sustained damage causing permanent vision loss. (*See Decl. of Dr. Cesar T. Chavez* at 12.) Dr. Chavez recommended immediate surgery. (*See id.* at 11.) On February 2, 2000 Plaintiff finally underwent eye surgery.[3]

Based on these undisputed facts, the Court finds that Plaintiff's vision loss was reasonable foreseeable when Plaintiff filed her administrative claim in October 1999. The record plainly establishes that Plaintiff was on notice that her optical nerve was at risk of permanent damage in the absence of adequate medical treatment. This notice occurred no later than March 1999 after Plaintiff consulted with Dr. Toba. (*See Def.'s Opp'n Ex. A.*) Plaintiff was further placed on notice in August 1999 when Dr. Toba informed her that she needed surgery to alleviate the intraocular pressure in her right eye two months before she filed her claim. (*See Def's Opp'n Ex. B.*) In the face of such undisputed medical evidence, Plaintiff cannot credibly argue that her worsened medical condition was not reasonably foreseeable by mid-1999.

Having received multiple warnings regarding her deteriorating medical condition throughout 1999, Plaintiff had the burden to assume the worse-case scenario when she filed her claim in October 1999. *See Reilly v. United States*, 863 F.2d 149, 173 (1st Cir.1988). As the *Reilly* court noted:

As between prospective defendant and prospective plaintiff, the latter is in by far the better position to determine the worst-case scenario or, if uncertain, to paint the picture as bleakly as reason permits and conscience allows. If a plaintiff misjudges, as to matters known or easily deducible when her claim is

---

**3.** Plaintiff could have amended her administrative claim at this time because the INS had not yet denied her claim. *See generally* 28 U.S.C. § 2675(a). However, Plaintiff elected not to file an amendment.

filed, it seems more equitable for her to bear the burden of miscalculation than to impose it on the sovereign.

*Id.* Because the prospect of permanent damage to Plaintiff's optical nerve was known, Plaintiff is now barred from increasing her FTCA complaint for damages. *See e.g., Lowry,* 958 F.Supp. at 719 ("Information going to the exact nature, extent and duration of a previous diagnosis is not a basis for an increase in damages.") Plaintiff, at worst, was on fair notice to guard against potential vision loss in August 1999 when Dr. Toba confirmed that Plaintiff's medication was not controlling the intraocular pressure and concluded that "traveculaplastia surgery is required for better control." (*Def.'s Opp'n Ex. B.*) The Court concludes that Plaintiff has not carried her burden to establish that her permanent vision loss in her right eye was not reasonably foreseeable when Plaintiff first submitted her October 12, 1999 administrative claim.[4]

In electing to file her administrative claim one year after the accident, Plaintiff is additionally assumed to have properly investigated the nature and extent of her injuries. *See Low v. United States,* 795 F.2d 466, 471 (5th Cir.1986) ("[I]f the exact nature, extent and duration of each recognized disability must be known before Section 2675(b) will be given effect, that section will rendered useless; and the government will be unable to evaluate any claim made against it without the threat that, if it does not settle, its liability may increase substantially."); *Reilly,* 863 F.2d at 173 ("As between prospective defendant and prospective plaintiff, the latter is in by far the better position to determine the worst-case scenario, or, if uncertain, to paint the picture as reason permits and conscience allows."). Clearly, Plaintiff did not arbitrarily formulate her $75,000 claim for damages. The Court presumes that Plaintiff secured thorough and well-informed medical and legal advice regarding the extent of her injuries prior to submitting her administrative tort claim—Plaintiff does not contend otherwise.

Finally, Plaintiff's proposal to increase her claim to $500,000 would increase the government's potential for liability six times over. For purposes of settlement, such an increase may have affected the government's prior analysis and handling of Plaintiff's claim, notwithstanding Defendant's present denials of legal liability. To permit Plaintiff to now claim $500,000 in damages would seriously undermine the primary goal of the FTCA—to facilitate administrative settlement prior to the commencement of a civil action. *See e.g., Johnson v. United States,* 704 F.2d 1431, 1442 (9th Cir.1983) ("The primary goal of the procedures established by the FTCA is to facilitate satisfactory administrative settlements.")

### Iv. Conclusion And Order

In light of the foregoing, the Court **DENIES** Plaintiff's motion to amend with prejudice.

**IT IS SO ORDERED.**

---

4. Plaintiff contends that Defendant has the burden of showing that Plaintiff's injury was not reasonably foreseeable when Plaintiff filed her administrative claim. (*Pl.'s Reply* at 2–3.) Plaintiff is wrong. It is well settled that a plaintiff has the burden of proving "newly discovered evidence" under 28 U.S.C. § 2675(b). *See Milano v. United States,* 92 F.Supp.2d 769, 774 (N.D.Ill.2000) (holding that a plaintiff has the burden of proof to show newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency); *see also Lowry,* 958 F.Supp. at 719 ("The burden of proving 'newly discovered evidence' and/or 'intervening facts' rests with the plaintiff.")