**Norita SULLIVAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 00–73630.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 11, 2001.

Hadley J. Wine, Kepes, Wine, Southfield, MI, for plaintiff.

Mary S. Rigdon, U.S. Attorney's Office, Detroit, MI, for defendant.

### OPINION & ORDER DENYING DEFENDANT'S MOTION IN LIMINE TO LIMIT PLAINTIFF'S DAMAGES TO THE AMOUNT PRESENTED ADMINISTRATIVELY

ROBERTS, District Judge.

#### I. Introduction

This tort action is before the Court on Defendant's Motion in Limine. Norita Sullivan allegedly suffered multiple injuries when a United States Postal Service vehicle struck her car. At trial, Plaintiff seeks up to $500,00 in damages. On the other hand, the United States asks this Court to limit damages to the amount set forth in Plaintiff's administrative claim: $250,000.

For the reasons set forth below, Defendant's Motion in Limine [Doc. # 33] is **DENIED.**

#### II. Background

While stopped at a red light, Plaintiff's car was hit from the rear by a United States Postal Service vehicle on June 6, 1998. Plaintiff drove herself to the emergency room at Henry Ford Fairlane Medical Center. She complained of neck pain. When x-rays did not show a cervical fracture, she was diagnosed with "whiplash" and discharged with only a pain medication prescription. Four days later, she sought additional medical care for her neck and back pain. On July 2, 1998, a physician attributed her shoulder, headache, and lower back pain to acute post-traumatic neck and back injury associated with severe spasms of neck and back muscles. On July 26, 1998, Plaintiff's MRI revealed a new cervical disk herniation. On July 30, 1998, Plaintiff filed an administrative claim alleging $150,000 in damages for her neck and back injuries.

On May 10, 1999, Plaintiff underwent cervical fusion and diskectomy surgery following months of physical therapy. Despite the surgery, pain in her right shoulder continued. Her neck referred Plaintiff to Dr. Schimpke on July 13, 1999. Dr. Schimpke concluded that Plaintiff suffered from rotator cuff tendinitis or bursitis. In an August 12, 1999 *ad damnum*, Plaintiff notified Defendant of the May 10, 1999 surgery and increased her alleged damages from $150,000 to $250,000 because neck surgery had not been anticipated in the original administrative claim. He recommended that Plaintiff undergo physical

therapy, ultrasound, and a strengthening regimen.

Dr. Schimpke scheduled an MRI of Plaintiff's shoulder due to a lack of progress derived from physical therapy. The MRI indicated that Plaintiff had a torn rotator cuff. Dr. Schimpke recommended surgery. In a September 27, 1999 letter, Plaintiff amended her administrative claim to put Defendant on notice of the additional surgery. However, she did not seek an increase in damages because she did not anticipate that her costs would increase or that more surgery would be required.

Plaintiff underwent shoulder surgery on October 11, 1999 followed by six months of physical therapy Initially, Plaintiff experienced less pain and increased strength in her shoulder. In an April 5, 2000 office visit, however, Dr. Schimpke noted that Plaintiff had developed periodic throbbing in her shoulder. A May 12, 2000 MRI evidenced a retear of the rotator cuff. On that visit, Dr. Schimpke and Plaintiff discussed a second surgery on Plaintiff's shoulder. That surgery occurred on June 26, 2000. Plaintiff sent a letter to Defendant on June 23, 2000 notifying it of her impending surgery.

In the meantime, however, Plaintiff's claim against Defendant was formally denied in a letter dated June 6, 2000 which was not received by Plaintiff's counsel until July 7, 2000.

During the June 26th surgery, Dr. Schimpke identified another injury while observing that the repair undertaken during the first shoulder surgery was successful. Plaintiff underwent supplementary physical therapy following the second shoulder surgery. While Plaintiff has recovered from her surgeries and subsequent therapy, she alleges that she suffers

from daily residual weakness and a limited range of motion in her right arm.

### III. *Applicable Law and Analysis*

 Under the Federal Tort Claim Act (FTCA), the United States is liable for the torts of its employees while acting within the scope of their employment. 28 U.S.C. § 1346(b).[1] Generally, a plaintiff is limited to the amount of damages alleged in her administrative claim under the FTCA. *Id.* at § 2675(b). However, an exception to this general rule exists if Plaintiff can show:

> First, [that] the evidence ... support[s] the increase in the prayer over the administrative claim. Citation omitted. [Second], the allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed.

*Low v. United States,* 795 F.2d 466, 469 (5th Cir.1986)(citing *O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 856 (2d Cir.1984)); § 2675(b). Ancillary to the two factors stated by the *Low* court, a plaintiff's good faith not to circumvent the notice requirement of § 2675 can be considered. *Allgeier v. United States,* 909 F.2d 869, 879 (6th Cir.1990).

### A. Evidence Supports Plaintiff's Increase in the Amount Administratively Claimed

 It is uncontroverted that Plaintiff underwent a second shoulder surgery on June 26, 2000. It is also not disputed that Plaintiff's administrative claim was denied by Defendant on June 6, 2000. Certainly, the second surgery and related costs (i.e., rehabilitation, increased pain and suffering, inability to work) can increase the amount of damages resulting from Plaintiff's motor vehicle accident. Pl.'s Amend.

---

**1.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(a).

Compl. ¶¶ 3, 11. The Court thus finds that through her allegations, Plaintiff has sufficiently supported an increase in the amount she administratively claimed. Plaintiff, however, must still show "newly discovered evidence" or an "intervening fact" in order for her to pursue damages not requested during the administrative process. *Allgeier v. United States,* 909 F.2d 869, 877 (6th Cir.1990)(citing *Kielwien v. United States,* 540 F.2d 676, 680 (4th Cir.1976)).

### B. Plaintiff's Injury Was Not Fully Discovered Until the Second Surgery Thereby Constituting "Newly Discovered Evidence"

■ In *Low,* the court considered whether the district court erred in awarding damages exceeding what the plaintiff initially sought in her administrative claim. 795 F.2d at 469. Plaintiff's child (Brian) suffered from cerebral palsy, a seizure disorder, blindness, deafness, and "mental retardation." *Id.* at 471. The district court found that the severity of Brian's medical problems were not discoverable at the time the claim was filed. The Court on appeal disagreed, holding that Brian suffered from the very same medical conditions when plaintiff filed the administrative claim. The Fifth Circuit concluded that plaintiff could have precisely determined the severity of Brian's condition at the time the claim was filed and that the knowledge concerning his condition was not due to either newly discovered evidence or intervening facts as required by § 2675(b).

In *Allgeier,* intervening-plaintiff Boldrick (Boldrick) sustained injuries to both of her knees in a motor vehicle accident on March 6, 1984. 909 F.2d at 877. She was awarded $104,000 at trial. She administratively claimed only $50,000 on appeal, after denial of its post-trial motion under § 2675(b) to reduce the award. The United States argued that Boldrick did not meet her burden of demonstrating newly discovered evidence or intervening facts.

The Court of Appeals found that when she filed her administrative claim,,

Boldrick was aware of the chondomalacia injury to both her knees (that is, roughness on the inside of her kneecaps) and the resulting painful crepitus ("crunching" sensation when moved). The pain appeared to increase and abate from time to time over the course of her [medical] treatment with Dr. Witten, which began on March 22, 1984. Approximately one year before she filed her claim, Boldrick had discussed having arthroscopic surgery, and was told by Dr. Witten that both her knees needed the procedure. Boldrick decided to have the surgery done on the right knee because it was "the worse," and the operation was performed on April 2, 1985.

Yet other evidence indicates that the operation *was* foreseeable. [ (Emphasis in original.) ] Shortly before the claim was filed, it appears that Boldrick's condition had improved and that the additional surgery was no longer contemplated. Dr. Witten testified that during an examination on January 16, 1986, just six weeks before Boldrick filed her claim, Boldrick told him that both knees were feeling much better. At that examination, Dr. Witten was unable to find any crepitus in the left knee, although Boldrick told him that she could feel it when she moved the knee. Perhaps more importantly, Dr. Witten told her during that visit to "see [him] if she had any problems in the future." [ (Brackets in original.) ] Boldrick may have been led thereby to believe that her injuries were to some extent, cured.

*Id.* at 878–879.

However, Boldrick's condition worsened over the next eighteen months. In a

September 3, 1987 medical examine, "Boldrick's left knee showed creptius throughout its range of motion." *Id.* at 879. After three more visits over the next three weeks, Boldrick's knee condition did not improve. *Id.* Despite conflicting evidence, the Sixth Circuit held that the district court's finding of an intervening fact was not clearly erroneous. *Id.* at 879. The fact that Boldrick's condition improved but eventually stagnated and required additional surgery were not events "reasonably foreseeable at the time the administrative claim was filed." *Id.*

*Allgeier* is both factually and legally similar to this case, while the facts of *Low* are entirely distinguishable from the facts presented here. Plaintiff and her doctor were unable to fully appreciate the severity of the injury to her right shoulder, even after the first surgery. This is evidenced by Dr. Schimpke's testimony:

> [The second surgery] was interesting. [Plaintiff] had had basically a, a delamination or a retear, but it was a partial, and she basically had return the top surface of the, of the cuff and it had flipped back. It was, I've never seen anything quite like it to be quite honest with you.... But this is a different, totally different kind of repair than the first one I saw. And again, very unusual in my experience.

Schimpke's Depo. pp. 20–21. This case is unlike *Low* because the plaintiff in that case encountered the same medical problems alleged in the administrative claim while never alleging any newly discovered evidence or an intervening fact of a different condition. Here, however, Dr. Schimpke had never seen a condition similar to the one endured by Plaintiff. Thus, the Court finds that the injury was undiscoverable at the time Plaintiff filed her administrative claim.

Furthermore, like Boldrick in *Allgeier*, Plaintiff noted an improvement in her right shoulder six months after the October 11, 1999 surgery. Nevertheless, such improvement was short lived. Pl.'s Br., Exh. A. at p. 2. When Plaintiff and Dr. Schimpke decided that a second shoulder surgery was necessary, the seriousness of the injury could not have been fully discerned until the second surgery detected the problem, as Dr. Schimpke's testimony illustrates. Schimpke's Depo., *supra.*

Moreover, Plaintiff's second shoulder surgery did not take place until June 26, 2000 Plaintiff's ability to fully inform Defendant of the newly discovered condition before the June 26, 2000 surgery is dubious. As such, the Court finds that the newly discovered evidence (that Plaintiff's shoulder required *additional* surgery to resolve a previously undiscoverable condition) defeats Defendant's Motion in Limine.

### C. Plaintiff Acted in Good Faith by Putting Defendant on Notice While Not Increasing the Amount Administratively Claimed

■ Good faith is not an element that must be proved in order to fall within the § 2675(b) exception. It has, however, been considered by other courts when faced with a similar issue. The *Allgeier* court noted that Boldrick's second operation and additional treatment was "also fortified, although not controlled, by the absence of any evidence of bad faith or manipulation intended to bypass the notice requirements of the statute." 909 F.2d at 879 After all, the *Allgeier* court explained that

> "[t]he manifest purpose of the sum certain requirements of § 2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are giv-

en full notice of the government's potential liability." *Low,* 795 F.2d at 470–471. Thus, [§ ] 2675 should be interpreted so that "[t]he government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settlement decisions." Second, such an interpretation of the statute is consistent with the principle that the [FTCA], as a statute waiving sovereign immunity, must be complied with strictly. *O'Rourke,* 730 F.2d at 856.

*Id.* at 878.

This record shows that Plaintiff kept Defendant fully informed throughout the administrative process. Plaintiff notified Defendant on August 12, 1999 that she underwent an anterior cervical diskectomy on May 10, 1999 and amended her claim from $150,000 to $250,000. In a letter dated September 27, 1999, Plaintiff notified Defendant that she would undergo shoulder surgery as per Dr. Schimpke's recommendation. Defendant does not dispute that Plaintiff's increase in damages administratively claimed for $250,000 gave it sufficient notice during the administrative process of her shoulder difficulties. Def.'s Br. p. 4.

Plaintiff's administrative claim was denied in a letter dated June 6, 2000. While the denial was not received by Plaintiff until July 6, 2000, Plaintiff nevertheless notified Defendant by letter, dated June 23, 2000, that she would undergo a second shoulder surgery.

Furthermore, when Plaintiff notified Defendant, she did not increase the amount administratively claimed, which connotes good faith, she did not automatically inflate the amount of damages she suffered. Instead, she waited until her injuries were entirely understood and her damages fully realized. As such, the Court finds that Plaintiff sufficiently put Defendant on no-

tice that she was undergoing more surgery. And, there is nothing to support that Plaintiff acted in bad faith or with the intention to circumvent the notice she is required to give the United States. Plaintiff, thus, acted in good faith, which augments the Court's denial of Defendant's Motion in Limine consistent with *Allgeier.* 909 F.2d at 879.

## IV. *Conclusion*

Plaintiff has shown (1) evidence supporting an increase in her prayer over the administrative claim; (2) that the newly discovered evidence could not be detected at the time the administrative claimed was filed; and, (3) that Plaintiff acted in good faith to put Defendant on notice of forthcoming damages. Defendant's Motion in Limine is therefore **DENIED.**

**IT IS SO ORDERED.**