Roy L. FRAYSIER, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 84-5121.

United States Court of Appeals, Eleventh Circuit.

July 23, 1985.

Jeffrey Axelrad, Director, Torts Branch, U.S. Dept. of Justice, Mary McElroy Leach, Trial Atty., Washington, D.C., M. Faith Burton, Torts Branch, Civ. Div., Russell L. Caplan, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Robert S. Greenspan, Washington, D.C., for defendant-appellant.

Norman S. Klein, N. Miami Beach, Fla., for plaintiff-appellee.

Before RONEY and TJOFLAT, Circuit Judges, and BROWN *, Senior Circuit Judge.

RONEY, Circuit Judge:

In the Federal Tort Claims Act, which provided a limited waiver of governmental immunity, Congress provided that no tort action could be instituted against the United States for a sum in excess of that presented to the federal agency which committed the tort, except where the increased amount is based on newly discovered evidence not reasonably discoverable when the agency claim was presented, or on in-

John R. Brown, Circuit Judge, sitting by designation, filed concurring opinion.

* Honorable John R. Brown, U.S. Circuit Judge    for the Fifth Circuit, sitting by designation.

tervening facts. In this case involving injuries resulting from a swine flu vaccine, the question is whether increased knowledge of plaintiff's physical injuries amounts to newly discovered evidence. The district court, 566 F.Supp. 1085, decided that based on his physical progress and on different medical opinions, plaintiff's discovery that his injuries were permanent, rather than temporary, satisfied the statute's exception, and awarded $275,000 in damages, in contrast to the $50,000 claim presented to the agency. Although not susceptible to a broad approach, the facts of this case support the district court's decision, so we affirm.

The plaintiff, Roy Fraysier, received a swine flu vaccination on November 15, 1976. Within two weeks he began to experience pain and weakness in his lower extremities which led him on December 7, 1976, to visit his physician Dr. Reinmuth, who prescribed muscle relaxants for the pain, cramping, and spasms in Fraysier's legs. Thereafter plaintiff's pain and weakness increased until, almost paralyzed, he entered the Veteran's Administration (VA) hospital on January 24, 1977 where he stayed until March 11, 1977 and was treated for staph septicemia, a serious systemic bacterial infection. Over the following year, his physical condition gradually improved although it never returned to what it had been prior to the swine flu vaccine.

On January 10, 1978, Fraysier filed an administrative claim asking $50,000. To that claim he attached a brief note from Dr. Gelbard, who treated Fraysier at the VA Hospital, which stated that Fraysier's diagnosis in January and February 1977 was "staphylococcal sepsis" and that his prognosis was "fair." The Government denied liability for the administrative claim. Plaintiff brought this action in August 1980 for $1,500,000 and received a judgment for $275,000. The sole question on this appeal is whether Fraysier's claim was limited by the Federal Tort Claims Act to $50,000. 28 U.S.C.A. §§ 1346(b), 2671–2680.

The district court found that (1) plaintiff suffered from Guillain-Barre Syndrome (GBS). which was proximately caused by the swine flu vaccination; (2) plaintiff believed at the time of filing his administrative claim that his condition would improve; and (3) plaintiff discovered some time after filing his administrative claim that his disabilities would not improve as he had anticipated. These findings are not challenged by the Government. On this appeal, the Government challenges neither liability nor that $275,000 is reasonable compensation for plaintiff's injury.

The decision in this case turns on the application of that part of the Federal Tort Claims Act found in 28 U.S.C.A. § 2675(b).[1] That section limits Fraysier's claim to $50,000 unless "the increased amount is based upon newly discovered evidence not reasonably discoverable" at the time the $50,000 claim was presented to the agency. This case presents some difficulty for two reasons: first, plaintiff had Guillain-Barre Syndrome at the time he made the agency claim, but it had not been diagnosed, and second, that disease itself, under some circumstances, is difficult to diagnose and has varied long term effects. There seems to be little question that the plaintiff, himself, at that time had no reason to believe that his condition would be permanent.

Dr. Reinmuth was a neurologist in whom plaintiff had reason to have confidence. The doctor had arranged Fraysier's 1959 back surgery, and despite not having been examined by him in the 15 intervening years, Fraysier went to Dr. Reinmuth when he first noticed the pain and weakness. His visit at this time was abbreviated. The doctor did no neurological testing and was unaware that the plaintiff had had a flu innoculation. Fraysier's condition in the

---

1. 28 U.S.C.A. § 2675(b) states in pertinent part: Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increase amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

VA hospital was diagnosed as a bacterial infection and was brought under control.

Mrs. Fraysier testified that Dr. Gelbard, a VA doctor, suggested to her that her husband's condition might have resulted from the swine flu innoculation, but neither he nor any other of Fraysier's physicians made a diagnosis of GBS or advised plaintiff of its possible permanent consequences. In fact, Dr. Reinmuth testified at trial that plaintiff did not have GBS. Dr. Avin, another neurologist who cared for plaintiff at the VA hospital and diagnosed septicemia, also testified during a deposition that he believed no GBS existed. Dr. Mayer, whom plaintiff consulted on such matters as high-blood pressure and colds, made no diagnosis of GBS. So it seems clear there was record support for the decision that Fraysier reasonably believed his condition was temporary at the time he made the agency claim. Even if Fraysier had thought he had GBS, since Mrs. Fraysier testified that Dr. Gelbard suggested it to her, the district court noted that in most cases the syndrome progresses to its zenith within four weeks of its onset, and recovery is seen thereafter in a vast majority of the cases. Fraysier testified that he chose to ask for $50,000 based on the assumption that his condition would continue to improve.

By the time this lawsuit was tried, plaintiff had a reasonable basis to conclude that his injuries were permanent. Two physicians concluded that plaintiff's condition resulted from GBS. Drs. Scheinblum and Sheremata, both neurologists, made "historical diagnoses" of GBS and testified that Fraysier had permanent injuries. They reviewed all of plaintiff's past medical records, considered the effects of Fraysier's medical condition on the manifestation of GBS symptoms, and concluded that the plaintiff had GBS and that his symptoms were GBS-induced. Based on their testimony, the district court held that plaintiff had GBS.

The legal question becomes whether this change in expectation, reasonably based, is newly discovered evidence within the meaning of the statute. In *United States v. Alexander*, 238 F.2d 314, 318 (5th Cir. 1956), this Court allowed an increase in damages based on a "change of expectation" evidence. Plaintiff there discovered his arm would not improve without surgery, when at the time of filing he had anticipated that it would heal. In other situations courts have held that a "change of expectation" is sufficient to fulfill section 2675(b)'s requirement. *See Husovsky v. United States*, 590 F.2d 944, 954–55 (D.C. Cir.1978) (prediction of child's increased life span warranted increased damages); *McDonald v. United States*, 555 F.Supp. 935, 957–62 (M.D.Pa.1983) (change in knowledge of severity of GBS-induced impairments in part supported newly discovered evidence determination), *aff'd mem.*, 738 F.2d 423 (3d Cir.1984); *Rabovsky v. United States*, 265 F.Supp. 587 (D.Conn.1967) (plaintiff, who through no fault of his own did not get a physician's statement prior to filing and did not know the medical extent and expense of injuries, was allowed to increase damages after securing medical opinion).

The purpose of section 2675(b) undoubtedly is to limit claims on which there is only a change in valuation between the agency claim and the lawsuit. That is not the case here. The physical effect of the injury was apparently about the same at the agency level as it was at trial. That those effects would remain permanent, was not known at the agency level. Before the vaccination, Fraysier who was already partially disabled by a back injury, could function as a homemaker, walk without a cane, do light construction work, fish, hunt and golf. He now walks with a shuffling gait, requires a cane or walker, falls unexpectedly, and suffers from constipation, impotence, and some mental disability. He can no longer fish alone, mow a lawn, help in the house, or contribute as a family member. Now that it is known that the injuries were caused by GBS and given their duration, permanency is predictable. Permanent injuries obviously warrant more damages than temporary ones.

The Government argues that the condition of Fraysier was "reasonably discoverable," in the terms of the statute, with reasonable diligence, at the time of the filing of the administrative claim, and that any expectation of improvement was unwarranted. We need not decide what would be the result if the condition should have been diagnosed and Fraysier advised of its consequences, or if it was unreasonable not do so. The court here held that a prediction of improvement could not have been made with any certainty at the time.

The district court considered extensive medical evidence concerning (1) the unpredictable and complex nature of Guillain-Barre Syndrome, a neurological disorder usually affecting motor functions; (2) the varied schools of thought concerning its neurological causes and long and short term effects; (3) the necessity of diagnosing GBS "historically," that is, by reviewing all symptoms and past medical conditions "after the syndrome has run its course" in order to make a correct diagnosis because often the symptoms viewed in isolation indicate that no GBS exists when in fact a historical diagnosis indicates that it did; (4) the effect of Fraysier's past medical condition, particularly his spine surgery, on the possibility of making an accurate GBS diagnosis; (5) the reliability of tests used to diagnose GBS; and (6) the likelihood that plaintiff's physical condition complicated his symptoms and obfuscated the diagnosis of GBS. The medical evidence before the trial court and the nature of GBS show that the district court's finding that a prediction of plaintiff's improvement could not have been made with any certainty at the time of filing was not clearly erroneous.

One district court provided the following reasoning for finding that the plaintiff could not reasonably have discovered the parameters of his GBS at time of filing:

> [GBS is a] very subtle and complex injury, an injury which is to this day a mystery to the medical field. Were we dealing with a broken arm or leg, we might impose upon the Plaintiff a more serious burden of proving that the present prognosis was discoverable. But inasmuch as we are dealing with the neurological effects of the injection of a drug, we are compelled to allow Plaintiff to amend his claim.

*McDonald,* 555 F.Supp. at 958 (*quoting Smargiassi v. United States,* Civ. No. 80–0389, Memorandum and Order at 2–3 (M.D.Pa. July 1, 1981)).

Plaintiff should not be charged with knowing what the doctors could not tell him. The district court did not err in refusing to limit Fraysier's claim to $50,000.

AFFIRMED.

JOHN R. BROWN, Circuit Judge, concurring:

I concur fully in Judge Roney's opinion for the Court. Its correctness merely reflects the peculiar nature of GBS and, more so, the peculiar—in the sense of "uniqueness"—nature of the United States acknowledgement of unrestricted liability for damages occasioned by GBS and the executive's official confession of liability by a cabinet member of unquestioned authority.

See, for example, *In Re Swine Flu Immunization Products Liability Litigation v. United States,* 533 F.Supp. 703, 718 (D. Utah 1982):

> Pursuant to 28 U.S.C. § 1407, all actions were consolidated by the Judicial Panel on Multidistrict Litigation on February 23, 1978 for coordinated pretrial procedures before the United States District Court in Washington, D.C.[26] During pretrial procedures before that court, the controversial but crucial official statement of then-Secretary of Health, Education and Welfare, Joseph A. Califano, Jr. was made.

> Secretary Califano stated that with respect to those alleging GBS,[27] the government was adopting a new policy. Persons who contracted GBS from the swine flu vaccine, in order to receive federal compensation:

> > [W]ill not need to prove negligence by Federal workers or others in the Swine Flu Program as required by

**482**

Federal law and the law in many states. Instead claimants in most cases need to show only that they in fact developed Guillain-Barre as a result of a Swine Flu vaccination and suffered the alleged damage as a result of that condition. (Statement of Secretary Califano, June 20, 1978).