**Treamenda SPIVEY; Richard Spivey, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant,**

and

**Department of the Navy; Michael E. Woodard, Defendants.**

**No. 89–2185.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1990.

Decided Aug. 15, 1990.

Rudolf A. Renfer, Jr., Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., Stephen A. West, Asst. U.S. Atty., Raleigh, N.C., on brief), for defendant-appellant.

Robert James Burford, Burford & Pugh, Raleigh, N.C., argued (Prince E.N. Shyllon, Raleigh, N.C., on brief), for plaintiffs-appellees.

Before ERVIN, Chief Judge, and CHAPMAN and WILKINSON, Circuit Judges.

CHAPMAN, Circuit Judge:

The United States (the "Government") appeals an adverse judgment arising from an automobile accident. We affirm in part, vacate in part, and remand for a recalculation of damages.

I

Mrs. Treamenda Spivey and Mr. Richard Spivey sought damages incurred as the result of an automobile accident which occurred on a rainy day near Franklinton, North Carolina, at about 5 p.m. on July 29, 1985. Michael Woodard, a Navy Recruiter, was driving two potential recruits from Henderson to Raleigh in a government car—a 1981 Plymouth Horizon. Woodard was acting within the scope of his employment as an employee and agent of the United States.

Woodard was driving in the left of two south-bound lanes on Highway # 1 within the posted speed limit of 55 miles per hour. The roadway and shoulders of the highway were wet. Woodard decided to change to the right lane. Seeing no vehicle, he began to pull into the right lane.

At the same time, Mrs. Spivey was driving a relatively new 1985 Ford Mustang GT along Highway # 1 at about 63 miles per hour in the right south-bound lane and was gradually overtaking the Woodard vehicle. The front of the Mustang began to parallel the rear of the Plymouth just as Woodard began pulling into the right lane. Woodard's passengers saw the Mustang and yelled a warning to Woodard. Although Woodard's right front wheel had crossed into Mrs. Spivey's lane, Woodard quickly pulled his car to the left and Mrs. Spivey pulled her car to the right to avoid a collision. The vehicles did not collide, and Woodard returned to the left lane. However, while attempting to pull to the shoulder to avoid Woodard's vehicle, Mrs. Spivey lost control of her car. It proceeded down a grassy embankment and rolled over. The Mustang was a total loss, but Mrs. Spivey sustained only minor physical injuries from the accident. However, she sustained substantial psychological injuries from the accident.

Mrs. Spivey had a history of psychological problems brought on by a number of tragic incidents in her past. Although she suffered from a personality disorder, Mrs. Spivey's functional ability had not been impaired prior to the accident, because of

successful therapy. Following the accident, Mrs. Spivey was diagnosed with Post Traumatic Stress Disorder (PTSD), Major Depression and Anhedonia (the loss of ability to enjoy). Later, Mrs. Spivey developed tardive dyskinesia, a serious side effect of the medication she was taking for her PTSD. The tardive dyskinesia abated when the medication was discontinued. However, the evidence indicated that it is likely that she will have to resume the medication and there is a two-third's chance that any future tardive dyskinesia will be permanent.

The district court found that before the accident, Mrs. Spivey had undergone successful therapy for past traumas, but she had never required hospitalization. Since the accident, Mrs. Spivey has been hospitalized three times for PTSD and related illnesses caused by the accident. Her future ability to work is uncertain. She no longer functions well in any capacity, is unable to perform homemaking and parenting duties, and is extremely withdrawn and unhappy. Mr. Spivey has taken over nearly all duties formerly performed by his wife. The district court also found that Mrs. Spivey's prognosis is poor, that her impairment will last at least into old age and perhaps for life, and that she may require frequent, if not permanent, institutionalization.

The Spiveys filed an initial administrative claim for their damages pursuant to the Federal Torts Claims Act (FTCA) on April 16, 1986, and amended their claim on January 13, 1987. In the amended claim, the Spiveys claimed a total of $594,124.25 in damages ($530,124 for Mrs. Spivey and $64,000 for Mr. Spivey). Unable to resolve their claim at the administrative level, the Spiveys filed a complaint in the United States District Court for the Eastern District of North Carolina. After a trial, a magistrate found the Government liable to Mrs. Spivey in the amount of $870,191.11 and to Mr. Spivey in the amount of $339,-000.00.

## II

 At the outset, the Government argues that the court erred in finding that Mrs. Spivey was not contributorily negligent in the accident. The Government also argues that the court erred in finding that the accident caused all of Mrs. Spivey's current illnesses. The Government contends that Mrs. Spivey's current problems pre-existed the accident, and were merely aggravated by the accident. The trial court found that Mrs. Spivey was able to fully function as wife, mother, employee, and active member of the community before the accident, but not after the accident. After careful review of the record, we affirm the court's findings on the issue of contributory negligence and on causation because they are supported by substantial evidence in the record and are not clearly erroneous.

## III

The Government objects to the award of damages in excess of that stated in the administrative claim. Damages in a suit brought under the FTCA are generally limited to the amount of the administrative claim.* However, the court allowed the additional damages under the exception provided in 28 U.S.C. § 2675(b), by finding that the evidence as to the full extent of Mrs. Spivey's disability and future medical care fell within the exception, because Mrs. Spivey's prognosis was not determined and her tardive dyskinesia did not develop until after the claim was submitted.

 The Government argues that the court ignored the statutory language of § 2675(b), which required it to determine whether the evidence was "reasonably discoverable," and improperly used the lesser standard of whether the evidence had been discovered. Despite some ambiguous language, we find that the district court ap-

---

* Title 28 U.S.C. § 2675(b) (1988) provides:

Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon new-

ly discovered evidence not reasonably discoverable at the time or [sic] presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

plied the correct legal standard in determining that Mrs. Spivey's additional claims met the exception and entitled her to assert damages in excess of her administrative claim. The court found that Mrs. Spivey's tardive dyskinesia *"could not have been* diagnosed or included" in the amended administrative claim, and that "the full extent of Plaintiff's disability and future medical care and needs were either facts not *reasonably discoverable* at the time the administrative claim was amended or intervening facts." (Emphasis added.)

The Government also argues that the trial court erred in applying the § 2675(b) exception by considering inadmissible evidence. We agree. In assessing damages in excess of the claim, the lower court relied heavily on a post-trial affidavit filed by counsel for Mr. and Mrs. Spivey. This affidavit was patently inadmissable, and we vacate the award of damages in excess of the administrative claim and remand for a recalculation as instructed below.

The issue of whether plaintiffs could claim damages in excess of their administrative claim arose early in the case, when the Government filed a pre-trial motion in limine to limit evidence concerning damages to the amount of the administrative claim. The plaintiffs responded to that motion with a pre-trial memorandum. Rather than ruling on the motion in limine prior to trial, the court held the motion in abeyance and heard testimony regarding damages in excess of the administrative claim. During the trial, the Government moved to strike such evidence as being outside the administrative claim, but the court declined to rule on those motions. Instead, the court stated that it wished to hear both sides regarding the statutory limitation on damages, and stated that it would allow plaintiffs to submit affidavits to counter the motion in limine at a later date. The court did allow plaintiffs to submit an affidavit, signed by plaintiffs' counsel, after the close of oral testimony.

▇▇▇▇ We assume that the court allowed the affidavit to counter the motion in limine under Fed.R.Civ.P. 43(e), which states that a court may decide a motion by affidavits

or on oral testimony. However, the time for ruling on the motion in limine under Rule 43(e) had long passed by the close of the trial. Rule 43(e) applies only to motions "based on facts not appearing of record," and is more commonly used to resolve preliminary issues in connection with jurisdictional or related types of motions. *See Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir.1986) (Rule 43(e) has limited roles, which do not include hearings in which the court weighs evidence). During trial, the court allowed evidence on the discoverability of Mrs. Spivey's prognosis. By the close of the trial, there simply was no motion in limine "based on facts not appearing of record" as to which the court could accept affidavits. The focus of the court's attention had shifted to resolving the substantive factual issue of whether the plaintiffs were entitled to damages in excess of their administrative claim. This issue should not have been resolved by affidavits in any case, and the submission of a post-trial affidavit to counter defendants' pre-trial motion in limine was clearly not authorized by Rule 43(e).

▇▇▇▇ The submission of the affidavit was also improper because it was that of plaintiffs' counsel, Mr. Burford. While affidavits submitted by counsel are permissible under some circumstances, this was not one of them. It is elementary that counsel may not participate both as an advocate and as a witness, absent special circumstances. North Carolina Rules of Professional Conduct Rule 5.2 (1990). By offering his affidavit on a factual issue, Mr. Burford acted as a witness.

The affidavit was offered and weighed as substantive evidence that the extent of Mrs. Spivey's disability was not reasonably discoverable at the time the administrative claim was amended. For example, Mr. Burford stated that he "consulted with ... Dr. Comer, to determine his prognosis" before filing the administrative claim, but that "Dr. Comer informed us ... that he was unable at that time to give a prognosis." Mr. Burford also stated that Dr. Comer wanted to monitor Mrs. Spivey's response to psychotherapy and medications

for at least 6 months following her third release from the hospital before forming a prognosis as to long term disability, and that Dr. Comer expressed his hope that "there was still reasonable possibility that she might satisfactorily recover." In his affidavit, Mr. Burford offered additional evidence regarding Mrs. Spivey's current status, her development of tardive dyskinesia after the administrative claim was filed, and her future prognosis.

 In addition to being improper as substantive evidence by counsel, the affidavit is inadmissible because it is hearsay. Although Fed.R.Civ.P. 43(e) provides an exception to the general rule against hearsay, Rule 43(e) is inapplicable here. The affidavit is hearsay by Mr. Burford, because it is a statement offered in evidence to prove that Mrs. Spivey's status was not reasonably discoverable prior to the filing of the amended administrative claim. Fed.R. Evid. 801 states that a prior statement such as an affidavit is not hearsay only if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement." Of course, Mr. Burford did not testify at trial, he was not subject to cross-examination, and his statement is hearsay. None of the hearsay exceptions apply in this case. The affidavit should have been excluded under Fed.R. Evid. 802; the Government had no opportunity to cross-examine Mr. Burford or to rebut his statements. Mr. Burford's affidavit also contains many statements regarding communications to him by Dr. Comer, as to which the Government had no opportunity to cross-examine Dr. Comer. Such statements are also inadmissible hearsay.

 Although appellees complain that the Government did not make a timely objection to the offer of the affidavit, the Government did request the court to strike the affidavit nine days after it was offered because "[t]here is no legal basis or rule which would allow this court to consider an affidavit of plaintiffs' counsel following the close of evidence in this case." The Government also indicated a hearsay objection by stating: "Defendant does not have any manner to rebut anything stated in the affidavit or to call any of the witnesses whose hearsay testimony is attempted to be elicited in affidavits." This motion to strike was sufficient under Fed.R.Evid. 103(a)(1), and the grievous error in admitting the affidavit requires us to vacate the award of damages.

V

 Having ruled that the admission of the affidavit was error, we turn now to re-assessing the evidence of plaintiffs' damages in excess of their administrative claim. Plaintiffs' claims for damages in excess of their administrative claim may be divided into two categories; those concerning Mrs. Spivey's development of tardive dyskinesia, and those concerning her long-term prognosis. The lower court relied heavily upon the inadmissible affidavit in finding that evidence of damages regarding Mrs. Spivey's long-term prognosis was newly discovered. The court noted that "there was no testimony as to the exact date it was first determined that Plaintiff's condition would continue well into her future years." However, the court also stated that the records of Mrs. Spivey's treating physician "tend to show that he had not made ... a prognosis by January 1987." Plaintiffs bear the burden of proving that they are entitled to damages in excess of their administrative claim. *Kielwien v. United States*, 540 F.2d 676, 680 (4th Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976). *Smith v. United States*, 239 F.Supp. 152 (D.Md.1965). To recover damages in excess of their administrative claim based upon Mrs. Spivey's long-term prognosis, plaintiffs must show that Mrs. Spivey's prognosis and future disability could not have been discovered prior to January 1987. We vacate the award of damages in excess of the administrative claim so that the district court may carefully consider this issue based on the evidence of the record, which evidence does not include the affidavit of attorney Burford.

 The uncontroverted evidence in the record does support the court's finding that

Mrs. Spivey's development of tardive dyskinesia could not have been discovered prior to the filing of the administrative claim. The amended claim was filed in January 1987. Medical records show that Mrs. Spivey did not develop symptoms of tardive dyskinesia until August 1987. Tardive dyskinesia is a known possible side effect of the medications which Mrs. Spivey began taking in the fall of 1985. However, prior to August 1987, Mrs. Spivey exhibited no symptoms of that side effect. Therefore, we affirm the court's finding that the occurrence of this side effect, after the administrative claim was submitted, was "newly discovered" evidence within the meaning of § 2675(b).

## VI

In conclusion, we affirm the district court's findings of liability of the government to the plaintiffs and the award of damages up to the amount of the amended claim of January 1987, but we vacate the award of damages in excess of the amended administrative claim because it was based in part on inadmissible evidence concerning the discoverability of Mrs. Spivey's long-term prognosis. We affirm the court's finding that damages in excess of the administrative claim are permissible in light of newly discovered evidence concerning tardive dyskinesia, but remand for reconsideration of whether evidence of Mrs. Spivey's long-term prognosis is also "newly discovered" within the meaning of § 2675(b). The district court may, in its discretion, take additional testimony on this issue, provided such testimony is given under oath, and subject to cross-examination and other appropriate procedural safeguards.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.