# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4089

LUDMILLA ZURBA,

*Plaintiff-Appellee,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3586—**Matthew J. Kennelly**, *Judge.*

ARGUED MAY 24, 2002—DECIDED FEBRUARY 7, 2003

Before POSNER, MANION, and DIANE P. WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Ludmilla Zurba sued the United States under the Federal Tort Claims Act after she was struck by an automobile driven by an FBI agent. The district court assessed damages at $519,666, but offset that amount by the $100,000 Zurba had recovered from another tortfeasor. The district court then entered judgment against the United States in the amount of $419,666. The United States appeals, arguing that Zurba's damages should have been capped at $300,000—the amount she sought in her administrative claim. We disagree and therefore AFFIRM.

I.

On the morning of January 11, 1995, Ludmilla Zurba was standing at the corner of Michigan Avenue and Ohio Street in downtown Chicago, waiting to cross the street to catch a bus. Before she had a chance to cross, however, she was struck by an automobile driven by a member of the FBI's Violent Crimes Task Force; the car was propelled into her after colliding with two other automobiles. Zurba was taken to the hospital by an ambulance, where she underwent abdominal surgery to control internal bleeding and to repair a laceration to her kidney. Zurba remained in the hospital for eleven days. After her release from the hospital, Zurba was bedridden for six weeks, and did not return to work for approximately three more months.

Nearly a year after the accident, Zurba was diagnosed with an obstructed bile duct, which required doctors to remove both the obstruction and her gall bladder. Following this operation, Zurba was again away from work for six weeks. After returning to work, she experienced upper abdominal pain and sudden bowel movements and, in April 1996, she was diagnosed with irritable bowel syndrome. Throughout this time, Zurba also suffered from fear of being alone, fear of the dark, nightmares, and a variety of other anxiety-related problems.

About 17 months after the accident, on August 6, 1996, Zurba filed an administrative claim with the FBI in the amount of $300,000 under the Federal Tort Claims Act.[1] The United States denied this claim. After retaining new counsel, in May 1999, Zurba filed suit against the United

---

[1] Zurba also sued another driver, a private citizen, involved in the accident, and that suit was settled for $100,000.

States, seeking damages in the amount of $1 million. The district court bifurcated the liability and damages phases of the trial. Following a bench trial on liability held during July 2000, the district court found the United States liable for Zurba's injuries. The United States then filed a motion to limit Zurba's damages to $300,000—the amount she had sought in her administrative claim. The district court denied the motion and ordered discovery on damages to close by March 30, 2001.

A few days before discovery was set to close, Zurba sought psychotherapy for the first time. At the damages trial, Zurba then presented evidence of both her physical injuries and of emotional pain and suffering, including testimony that she suffered from an anxiety disorder and an adjustment disorder as the result of the January 1995 collision. At this time, the United States renewed its motion to limit Zurba's recovery to the $300,000 she had sought in her administrative claim. The district court deferred ruling on the issue until the conclusion of trial. After a four-day trial on damages, the district court determined that Zurba suffered total damages of $519,666 and after reducing that amount by the $100,000 Zurba had recovered from the driver of one of the other cars involved in the accident, the district court entered judgment against the United States in the amount of $419,666. The district court also denied the government's request to cap damages at $300,000, reasoning that Zurba's psychological damages were newly discovered and/or based on intervening facts, and thus the Federal Tort Claims Act's statutory cap did not apply. The United States appeals.

## II.

The sole issue on appeal is whether Zurba's damages are capped at the $300,000 she requested in her admin-

istrative claim under the Federal Tort Claims Act. Section 2675(a) of the Federal Tort Claims Act provides that before a plaintiff may file suit against the United States for personal injury or death, the plaintiff must have first presented the claim to the appropriate federal agency and have been denied compensation. Section 2675(b) further provides that:

> (b) Action under this section *shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency*, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b) (emphasis added).

On appeal, the United States contends that because in her administrative claim to the FBI Zurba only sought damages of $300,000, under § 2675(b) her recovery must be limited to that amount. Conversely, Zurba contends that her recovery is not limited to the amount set forth in her administrative claim because § 2675(b) established two exceptions to the statutory cap, both of which apply to her case.

Although this court has yet to consider the scope of § 2675(b), Zurba is correct that the statute creates two exceptions to the general rule that a plaintiff's recovery is limited to the amount requested in an administrative claim. Specifically, § 2675(b) provides that the cap does not apply "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or where the plaintiff presents "proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The

plaintiff has the burden of showing that her case fits within one of these exceptions. *Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990). In this case, the district court concluded that Zurba satisfied that burden by showing that her "psychiatric disorders and her emotional distress constituted 'newly discovered evidence' and/or 'intervening facts' following the presentation of her administration claim . . . [and] therefore [her damages for those claims] are not subject to the $300,000 cap established by the claim." This court reviews the district court's finding of "newly discovered evidence" and "intervening facts" under § 2675(b) for clear error. *Allgeier v. United States*, 909 F.2d 869, 877 (6th Cir. 1990); *Michels v. United States*, 31 F.3d 686, 689 (8th Cir. 1994).

On appeal, the government contends that the district court committed clear error in finding that newly discovered evidence or intervening facts justified a damage award in excess of Zurba's administrative claim because Zurba knew of her emotional injuries, or, at a minimum, her condition was reasonably discoverable at the time she filed her administrative claim. In support of its position, the government cites to trial testimony that established that four months before she filed her administrative claim, her doctor told her that stress management and psychotherapy would help her recover from her physical injuries. The government also relies on Zurba's own testimony that immediately after the accident and while she was still in the hospital, she suffered from fear of the dark, fear of being left alone and nightmares, and that following her return to work, she remained afraid to walk alone on Chicago streets and had a need for constant companionship. The government then points to the district court's finding that "Zurba has experienced these emotional and psychological symptoms in greater or lesser degree since

January 1995," which was 17 months before she filed her administrative claim. Thus, the government maintains, under the district court's own findings, Zurba knew of her emotional injury prior to filing her claim and therefore she cannot satisfy the "newly discovered evidence" or "intervening facts" exceptions to § 2675(b)'s damage cap.

While it is true that Zurba knew that she suffered from some emotional injury prior to the filing of her claim, the district court did not commit clear error in concluding that newly discovered evidence and/or intervening facts existed. Several reasons underlie our conclusion. First, Zurba presented substantial evidence that her fears and anxieties had all become significantly worse only after she had filed her claim with the FBI. An unforeseen worsening of a known injury may constitute "newly discovered evidence" or "intervening facts" under § 2675(b), as the Eighth Circuit held in *Michels*, 31 F.3d at 688. In *Michels*, the plaintiff, who had suffered various injuries to his hip and leg after his motorcycle was struck by a federal employee's vehicle, sued for damages in excess of the amount that he had previously presented in his agency claim because he had since developed arthritis and necrosis. Even though the plaintiff had known that his injuries carried with them the possibility of arthritis and necrosis, he did not factor those possibilities into his administrative claim because at the time of the filing he had not shown signs of either. The Eighth Circuit held that the plaintiff was entitled to recover damages in excess of the original claimed amount because "a known injury can worsen in ways not reasonably discoverable by the claimant or his or her treating physician, and . . . such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant § 2675(b) relief." *Id.* at 688. Similarly, in this case, the district court could reasonably conclude that Zurba's emo-

tional injuries worsened in a way that was not reasonably discoverable and thus constituted "newly discovered evidence" or "intervening facts" for purposes of the exceptions to the statutory cap.

The Fifth Circuit has also addressed this issue in *Low v. United States*, 795 F.2d 466 (5th Cir. 1986), holding that evidence which merely bears on the precision of the victim's prognosis is not newly discovered evidence. In *Low*, the plaintiff knew that their child suffered from cerebral palsy, a seizure disorder, and was blind, deaf and mentally retarded. The only unknown concerned the specific limitations these medical problems would place on the claimant, such as whether he would ever be able to go to school, walk, feed himself or make any developmental progress. The Fifth Circuit held that the fact that the Lows did not know "the exact nature, extent and duration of each recognized disability," did not prevent § 2675(b)'s damage cap from applying. *Id.* at 471. Significantly, in rejecting the plaintiffs' reliance on the "newly discovered evidence" and "intervening facts" exceptions to § 2675(b)'s cap, the Fifth Circuit noted that "[t]here is no evidence that these conditions became worse or that other conditions developed after the claim was filed." *Id.*

The Fifth Circuit has reiterated this reasoning more recently in *Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (holding that a plaintiff could not increase the damages sought in an administrative claim because the plaintiff could have reasonably obtained the information on the specific injuries that would be needed to make out the worst-case scenario when the original claim was made), and *Lebron v. United States*, 279 F.3d 321, 331 (5th Cir 2002) (holding that plaintiffs could not recover damages in excess of $20 million sought in their administrative claim, where the basic severity of a child's condition was known

and recited in the administrative claim). In *Lebron*, the court specifically noted that "*Low* makes clear that new information cannot surmount the bar created by §2675(b) if the information merely concerns the precision with which the nature, extent, or duration of a claimant's condition can be known." *Id.* at 330.

Similarly, the First Circuit in *Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988), explained that "[i]ntelligence which serves only to bear out earlier suspicions cannot unlock FTCA's narrow escape hatch." *Id.* at 171. Rather, "[d]iagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither 'newly discovered evidence' nor 'intervening facts' for the purposes of § 2675(b)." *Id.* Thus, in *Reilly* the court held that the plaintiff was barred by § 2675(b) from recovering damages in excess of the amount sought in the administrative claim because the "evidence upon which the district court relied to lift the cap was, at bottom, nothing more than 'the experts' subsequent confirmation that the worst possibilities had materialized." *Id.* at 172. Specifically, in that case the plaintiff's administrative claim alleged "seizures, blindness, profound neurological deficit," and at trial the plaintiff attempted to recover damages in excess of the administrative claim because she "would never be able to walk or talk, and [that] she would be able to see only enough to distinguish light from dark." However, as the court noted, those possibilities were known from the start, and therefore could not constitute newly discovered evidence. *Id.*

In contrast to these cases, in which the plaintiffs' original administrative complaint acknowledged the injury at issue, Zurba's case is distinguishable in that her severe emotional injuries which surfaced in the years following the accident were not included in the original claim.

Zurba's claim described the accident and stated that as a result, Zurba had "suffered severe internal injuries" consisting of a kidney laceration and an injury to her gall bladder. It made no mention of any emotional or psychiatric effects of the accident. Additionally, in this case the district court described the increase in the severity of her emotional distress as a psychiatric disorder that was caused by the accident but which is separate and distinct from her physical injuries. Moreover, as noted above, the district court heard evidence that Zurba's condition became worse in the years after she filed her claim with the FBI. And as the Fifth Circuit recognized in *Lebron*, "information can be newly discovered evidence or an intervening fact, however, if it sheds new light on the basic severity of the claimant's condition—that is, if it *materially differs* from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Lebron*, 279 F.3d at 330 (emphasis added). That is what we have here.

In fact, Zurba's case is more analogous to the several cases in which the courts have concluded that the plaintiff was exempt from the statutory damages cap because of intervening facts or newly discovered evidence. For instance, in *United States v. Alexander*, 238 F.2d 314 (5th Cir. 1956), the Fifth Circuit held that because "the plaintiff did not know when his administrative claim was presented that his shoulder would not heal without surgery," the plaintiff was entitled to recover damages in excess of the amount sought in the administrative complaint. *Id.* at 318. Similarly, in *Spivey v. United States*, 912 F.2d 80, 86 (4th Cir. 1990), the Fourth Circuit held that because medical records showed that the plaintiff had not developed symptoms of tardive dyskinesia until after the administrative claim was filed, damages were not capped by the amount

sought in that claim. *See also, Cole v. United* States, 861 F.2d 1261, 1263 (11th Cir. 1988) (plaintiff allowed recovery in excess of administrative claim where he only learned after filing his administrative complaint that his condition was permanent); *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985) (plaintiff allowed to recover damages in excess of administrative claim because plaintiff believed his condition would improve, but later determined his injuries were permanent).

Moreover, in this case, in addition to the increased severity of her emotional symptoms, the evidence established that Zurba did not know that she suffered from two psychiatric conditions (an anxiety disorder and an adjustment disorder) until nearly five years after she had filed her claim with the FBI. The district court could have reasonably concluded that these new diagnoses constituted "newly discovered evidence" or "intervening facts" under § 2675(b). *See Michels*, 31 F.3d at 688-89. *See also, Spivey*, 912 F.2d at 86 (holding that development of tardive dyskinesia after the filing of the administrative claim constituted "newly discovered" evidence, thus exempting the plaintiff from the cap of § 2675(b)); *Allgeier*, 909 F.2d at 878-79 (holding that, because evidence demonstrated that plaintiff's condition worsened significantly after the filing of the administrative claim, intervening fact warranted awarding a judgment in excess of the administrative claim).

Furthermore, Zurba's diagnosis of anxiety disorder and adjustment disorder followed two incidents that occurred in March 2001. In both of those incidents, while waiting for a train, Zurba had what a layman might call a panic attack, triggered by her belief that a male passenger waiting for the train was going to kill her. At trial, Zurba's doctor, Dr. Hartman, explained that what Zurba suffered in these

incidents are called "precipitant events" and that individuals like Zurba who are suffering from psychiatric disorders may not know they have any problems until such a precipitant event occurs. Based on this testimony, the district court could have reasonably concluded that these incidents in March 2001 constituted intervening facts and thus justified exempting Zurba from § 2675(b)'s cap.

The government argues in response that because Zurba was offered psychological help while in the hospital and urged by her sister and boyfriend to seek counseling, she could have reasonably discovered her psychiatric condition prior to filing her complaint. While that may be a legitimate view of the evidence, the district court could (and did) reasonably conclude that Zurba could not reasonably discover her psychiatric illness until she had suffered the precipitant events, described above, in March 2001.

This view was further confirmed in the district court's opinion because in the claim Zurba filed with the FBI, she did not mention any emotional injury, but only stated that she "suffered severe internal injuries." Thus, although the government's view is not untenable, neither is the district court's, and where two views of the evidence are equally permissible, a fact-finder's choice between them cannot constitute clear error. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). *See Allgeier*, 909 F.2d at 878-79 (discussing conflicting evidence as to whether worsening of medical condition constituted an "intervening fact" under § 2675(b), and concluding that district court did not commit clear error in finding that the statutory cap did not apply). Accordingly, the district court was not clearly erroneous in concluding that Zurba did not know of and could not have reasonably discovered

her anxiety and adjustment disorders by the time she filed her administrative claim.[2]

In reaching this conclusion, we are not saying, as the dissent suggests, that Zurba is entitled to avoid the $300,000 cap merely because her doctor gave a name to the emotional distress Zurba was already suffering. We also agree with the dissent that Zurba is not entitled to exceed the $300,000 cap to the extent the damages were attributable to the emotional distress from which Zurba was suffering at the time she filed her administrative claim. Rather, Zurba is entitled to exceed the $300,000 cap because the district court found that Zurba "had no reasonable basis to believe that her symptoms would persist, let alone worsen significantly as the Court has found they have done since the time of her administrative claim." Based on the record, these findings were not clearly erroneous.

The dissent also takes issue with the district court's calculation of damages, concluding that the bulk of the $219,666 in damages in excess of the $300,000 cap must be lopped off. Initially, we disagree with the dissent's view that $219,666 is at issue. In this case, the district court determined that Zurba's total damages were $519,666, but only entered judgment against the government in the amount of $419,666 because Zurba had recovered $100,000 from another tortfeasor. Thus, the government is only being held liable for $119,666 in excess of the $300,000 Zurba requested in her federal tort claim.

---

[2] Throughout we have treated the "newly discovered evidence" and "intervening facts" exceptions in tandem. While these are two distinct exceptions, we discuss them together in this case because it is irrelevant whether Zurba's later-diagnosed psychiatric conditions are considered "newly discovered evidence" or "intervening facts."

Admittedly, the government could have argued that Zurba's $100,000 recovery from the other tortfeasor should reduce the $300,000 claim cap. But significantly, the government did not make this argument. In fact, in its reply brief, the government states "Section 2675(b) means what it says, and the district court was wrong to award $119,000 in excess of the administrative claim."

Moreover, the Fifth Circuit in *Dickens v. United States,* 545 F.2d 886, 893 (5th Cir. 1977), concluded that the award cap of § 2675(b) only acts to limit the amount of the ultimate claim against the government and not the entirety of the damage award. Specifically, in *Dickens,* the plaintiff had filed an administrative claim in the amount of $2,300,000. However, at trial, the district court assessed total damages at $2,500,000, but then reduced that amount by half, since the plaintiff had already recovered $1,250,000 from a joint tortfeasor. The district court then entered judgment against the government in the amount of $1,250,000. While acknowledging that § 2675(b) caps the amount of recovery from the government, the court in *Dickens* concluded that that cap applied to the amount of judgment against the government—not the total amount of damages the plaintiff could prove. *See also, Martinez v. United States,* 780 F.2d 525, 530-31 (5th Cir. 1986) (holding that the cap of § 2675(b) applies to "the amount that a plaintiff seeks to recover from the government," and thus where "comparative fault principles are applicable under the relevant substantive law, the plaintiff should recover either his *pro rata* share of his proven damages or the amount of his administrative claim, whichever is less"). Given that the underlying purpose of § 2675(b) is to put the government on notice of its maximum potential exposure to liability, we find *Dickens* and *Martinez* persuasive and accordingly conclude that § 2675(b)'s cap on foreseeable damages applies only to the amount Zurba is seeking

to recover from the government, namely $419,666, and not the total proven damages of $519,666. In other words, the government may not use the $100,000 set-off from a non-government source to reduce the $300,000 cap.

As to the $119,666 excess, the district court did not commit clear error in concluding that those damages were unforeseeable. While the district court did not spell out the dollar amounts directly attributable to new, unforeseen injuries, the government did not challenge the court's calculation on appeal. In any event, the district court specifically assessed $19,000 in damages for future psychiatric care, and given the district court's finding that Zurba could not have reasonably known that she suffered from two psychiatric disorders at the time she filed her complaint, that $19,000 is not subject to the $300,000 cap. Likewise the damages the district court assessed for the increase in severity of Zurba's condition were unforeseeable, and, as the dissent notes, that totaled $80,000 (the $20,000 increase x 4 years). These unforeseeable damages total $99,000, which leaves an additional $20,666 in damages above the $300,000 cap. As noted earlier, the district court also found that Zurba reasonably believed her emotional problems would end after she recovered from her physical injuries, but that instead they lasted longer than reasonably anticipated. Because her emotional injuries lasted longer than reasonably foreseeable, Zurba was entitled to recover damages attributable to the prolonged duration, even to the extent those damages exceeded the statutory cap. While the district court did not identify when Zurba would have reasonably believed her emotional injuries would cease, the district court's award maintained her damage level at $20,000 per year for 2.67 years, increased the award to $40,000 per year for the next four years, and then awarded her a total of $25,000 for the last two years. However, according to the district court's

reasoning, over that eight-year-plus time frame, Zurba thought she would get better. But she did not. Therefore, to the extent her damage award remained constant over the years, a portion of those damages were unforeseeable. What portion is not exactly clear from the district court's opinion. Nonetheless, given that the government did not challenge the specifics of the calculation, and given that the district court could have reasonably concluded that Zurba suffered $20,666 in damages based on the unforeseeable duration of her condition, we conclude that the district court did not commit clear error in exceeding the $300,000 statutory cap by $119,666.

### III.

In sum, in August 1996 when Zurba filed her administrative claim with the FBI, she sought damages only for her physical injury, and any emotional distress she suffered at that time increased dramatically after the complaint was filed. Moreover, Zurba was not diagnosed with an anxiety and adjustment disorder until nearly five years after the filing of the complaint, and then only after two incidents brought to a head her psychological injuries. Under these circumstances, the district court did not commit clear error in concluding that newly discovered evidence and/or intervening facts justified a damage award in excess of the $300,000 sought in her administrative complaint. Accordingly, we AFFIRM.

POSNER, *Circuit Judge*, dissenting.  Before one may bring a suit against the government under the Federal Tort Claims Act, one must file an administrative claim with the agency alleged to have committed the tort, 28 U.S.C. § 2675(a), and a suit under the Act "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). It is hard to see the point of this rule, since there is no limit on what the plaintiff may ask for in the administrative claim. The cases (echoing the legislative history) say that the purpose is, by informing the government of its maximum exposure, to enable the government to make intelligent settlement proposals. *Allgeier v. United States*, 909 F.2d 869, 878 (6th Cir. 1990); *Reilly v. United States*, 863 F.2d 149, 173 (1st Cir. 1988). In less Aesopian terms, the purpose is to truncate the settlement range in the government's favor. However, for the rule's purpose, however it is stated, actually to be accomplished, a cost of some sort would have to be imposed on the plaintiff who asked for the sky. None is, unless the government is less likely, out of a kind of spite, to negotiate a reasonable settlement with a hog, which has not been suggested. So probably the only or at least the main effect of the rule is to create a trap for the unwary. Into that trap the plaintiff's original lawyer fell when he had her ask in the administrative claim for only $300,000. At trial he asked the judge to award her $2 million. The judge awarded $519,666, then subtracted $100,000 which had been paid by a joint tortfeasor. (This adjustment had nothing to do with the ceiling; the purpose was to prevent the plaintiff from being overcompensated.) Thus, the judge

allowed the ceiling to be pierced, precipitating the government's appeal to us. His action violated the statute; we should reverse, not affirm. No case cited by the majority suggests otherwise.

When the administrative claim was filed, 17 months after the very serious automobile accident that gave rise to it, the plaintiff had been suffering throughout that entire period continuous, undiminished, and severe emotional distress that the accident caused or triggered (it doesn't matter which, given the "eggshell skull" rule of tort damages, *Stoleson v. United States*, 708 F.2d 1217, 1220-21 (7th Cir. 1983)). By the time the case was tried, five years later, her symptoms had worsened. In a part of the district court's decision that is not challenged by the government, the judge valued the plaintiff's emotional distress at $20,000 per year for the first two years and eight months after the accident and $40,000 per year for the next four years, which were the four years leading up to the trial, plus $25,000 "for the next two years, the period in which it is reasonable to expect that Zurba's conditions will be resolved by [psychiatric] treatment." The total of the emotional-distress items is thus $238,333. The difference between this figure and the total damages award of $519,666 ($281,333 = $519,666–$238,333) is composed of other items of damages, all conceded to have been foreseeable at the time she filed her administrative claim but within the $300,000 ceiling that the claim established. If the $300,000 constraint is fully binding, $219,666 in damages, the bulk of the emotional-distress items, must be lopped off.

As a detail, the plaintiff is certainly not entitled to pierce the ceiling to recover damages for the emotional distress that she suffered *before* her symptoms worsened. I noted in the preceding paragraph that the judge's damages award for emotional distress jumped from $20,000 to

$40,000 per annum two years and eight months after the accident. That is the date on which the judge estimated that the plaintiff's symptoms worsened. There is no basis for supposing that the symptoms that she experienced before then—before the unexpected worsening—were unforeseeable. That amount is $53,333 ($20,000 × 2.67), which when added to the damages that the judge assessed for items other than emotional distress (the $281,333) yields a total of $334,666, which exceeds the $300,000 ceiling. The majority avoids this conclusion by adding the $100,000 paid by the joint tortfeasor to the $300,000 ceiling. This procedure is contrary to the language of the statute, which provides that a suit "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency." The plaintiff asked for more than $300,000, which she could do only if she fell within the statutory exception, which she clearly did not with respect to $34,666 of the amount that she sought and was awarded above $300,000. I am not a literal interpreter of statutes, but there should be a reason—in fact a good, a compelling reason—to ignore statutory language. The majority has offered no reason.

The district judge made no adjustment of the sort just suggested not because he was cavalier about statutory language (leaving that to the court of appeals), but because he attached no significance to the fact that the plaintiff's symptoms had worsened since her filing of the administrative complaint. He said "the question is whether Zurba reasonably realized or should have realized that [her symptoms were the result of psychiatric conditions diagnosed after the administrative claim was filed, namely an anxiety disorder and an adjustment disorder] at the time of her claim . . . . Zurba reasonably believed these to be the normal effects of having gone through what she had gone through, and not signs or symptoms of emotional distress

or a psychiatric disorder. The Court finds that Zurba has demonstrated that she neither knew nor should have known as of August 1996 [the month in which her administrative claim was filed] that she was suffering from a psychiatric condition or from emotional distress resulting from the accident." It cannot be correct to say that she did not know then that "she was suffering from . . . emotional distress resulting from the accident." No one suffers "emotional distress" without knowing it; it is a form of pain and to say "I was in pain but didn't know it" is nonsense. Zurba knew when she filed the administrative claim that she was in (emotional) pain and that it was the result of the accident; and whether it was a "normal" or an abnormal consequence of the accident, it was compensable; the more normal it was, the more compensable it was. A whiplash injury is a normal consequence of a rear-end collision; and of course it is a compensable consequence. She had no excuse for not claiming damages that she had already suffered.

An even deeper problem with the district court's analysis is its unexamined assumption that a diagnosis is an intervening fact or a form of newly discovered evidence, within the meaning of section 2675(b), even if it does not affect the estimation of damages. Until she was diagnosed with an anxiety and adjustment disorder, the plaintiff did not know she had a psychiatric disorder but knew she was experiencing emotional distress (it is, to repeat, not an unconscious state), for which, as her lawyer must have known, damages can be awarded with or without a psychiatric label. The significance of the diagnosis was that it indicated that her symptoms were likely to persist for a longer time, and perhaps be more severe, than she and her lawyer had thought. I am not disposed to quarrel with the district judge's finding that the plaintiff was not unreasonable in failing to see a psychiatrist earlier. It is common,

indeed I should think typical and even normal, to incur emotional distress in the wake of a severe personal injury, and even if it persists for months the victim would be unlikely to think the accident had triggered a psychiatric condition that might take on a life of its own long after the physical effects of the accident had dissipated. A minor puzzle is why the district judge thought that the plaintiff's psychiatric disorder would be completely cured within two years of the end of the trial, especially since some of the physical effects of the accident, notably her irritable bowel syndrome, are expected to persist for the rest of her life.

The fact that a condition is not expected to be permanent is no reason not to treat it. Increasingly Americans do seek treatment for even transitory emotional problems, and this has led some courts in tort cases to impose a duty to mitigate emotional injuries by analogy to the duty to mitigate physical injuries (the tort counterpart, traditionally called "avoidable consequences," *Outboard Marine Corp. v. Babcock Industries, Inc.*, 106 F.3d 182, 184 (7th Cir. 1997); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 199 (7th Cir. 1992), to the contract doctrine of mitigation of damages). See Eugene Kontorovich, Comment, "The Mitigation of Emotional Distress Damages," 68 *U. Chi. L. Rev.* 491, 507-08, 512 (2001). But mitigation is not in issue here; and there is still a sufficient stigma to seeking psychiatric treatment, and sufficient uncertainty about its efficacy, to make many, perhaps most, people prefer to suffer what they reasonably believe to be a temporary condition of emotional distress (or to self-medicate) than to see a psychiatrist about it. But whether a condition is correctly diagnosed has nothing to do with its compensability. *United States v. Kubrick*, 444 U.S. 111 (1979), holds that a claim under the Federal Tort Claims Act accrues when the victim knows of the existence and cause of his

injury, not when he learns whether it was committed in circumstances that created liability. The plaintiff could obtain damages for emotional suffering regardless of its diagnostic label. The fact that she was suffering emotional distress when she filed her administrative claim meant that she could pierce the $300,000 ceiling only to the extent that the emotional distress got unforeseeably worse or that there was an unforeseeable increase in its likely duration. See *Richardson v. United States*, 841 F.2d 993, 999, amended on an unrelated point, 860 F.2d 357 (9th Cir. 1988); *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir. 1984). This fundamental point the district judge missed; my colleagues repeat his error.

To see the error more clearly, suppose that a person were in an accident as a result of which he incurred an unreimbursed medical expense of $10,000 and an excruciating pain in his neck that he attributed to whiplash and that lasted a week. Suppose his lawyer filed an administrative claim under the Federal Tort Claims Act mistakenly asking for only $10,000 because the lawyer had forgotten about his client's pain, for which he could reasonably have asked an additional $2,000 in damages. Later the plaintiff discovers that the pain had not been the result of a minor (soft-tissue) whiplash injury, as he had first thought; rather, the accident had seriously damaged one of the vertebrae in his neck, and the damage had caused the pain; and while the pain had now ceased, an operation would be required to repair the vertebra in order to prevent further deterioration. The plaintiff could seek additional damages measured by the cost of the operation, but he could not seek them plus $2,000 (or any other amount) in damages for the pain merely because he had a better sense of the precise causal path connecting it to the accident. In effect, the district court in our case said that such a plaintiff would be able to add the cost of the earlier pain even though that

was a known quantity when she filed her administrative claim. She knew she had emotional distress; she knew it was caused by the accident; all she didn't know was that the accident had caused a psychiatric condition that had caused her the distress that she felt.

The case should be remanded for a determination of how much if any of Zurba's damages for the emotional distress that she suffered after the administrative claim was filed were unforeseeable then. Those are the only damages that can be used to pierce the $300,000 ceiling. The additional damages that she suffered as a consequence of the government's tort she can recover, if at all, only from her lawyer. This is one of the rare cases in which a claim for litigation malpractice would not be bedeviled by the difficulty of proving a causal relation between the lawyer's mistake and the outcome of the litigation. (I call it the lawyer's mistake, but I suppose it is possible that Zurba did not reveal the full extent of her emotional distress to her lawyer, and it is even conceivable that underestimating damages might be a way of extracting a quick settlement from the government, though in this case the government made no settlement offer at all.) Whatever part of the $419,666 damages award must be subtracted by virtue of the $300,000 ceiling is the loss inflicted on Zurba by her lawyer's mistake in specifying such a low amount of damages for an accident known to have inflicted severe, permanent physical injuries coupled with almost a year and a half of severe emotional distress with no end in sight.

No. 01-4089                                            23

A true Copy:

   Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*