18-1446-cv (L)
*Malmberg v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24ᵗʰ day of June, two thousand nineteen.

PRESENT:     JOHN M. WALKER, JR.,
                JOSÉ A. CABRANES,
                PETER W. HALL,
                     *Circuit Judges.*

---

CHARLES MALMBERG,

          *Plaintiff-Appellant-Cross-Appellee,*                    18-1446-cv (L)
                                                    18-1763-cv (XAP)

          v.

UNITED STATES OF AMERICA,

          *Defendant-Appellee-Cross-Appellant.*

---

**FOR PLAINTIFF-APPELLANT-
CROSS-APPELLEE:**                      ALAN J. PIERCE, Hancock Estabrook, LLP, Syracuse, NY (Robert B. Nichols, Buffalo, NY, *on the brief*).

**FOR DEFENDANT-APPELLEE-
CROSS-APPELLANT:**

JAMES XI (Dana J. Martin and Joshua
Waldman, *on the brief*), Attorney, Civil
Division Appellate Staff, United States
Department of Justice, Washington, D.C.,
*for* Grant C. Jaquith, United States
Attorney for the Northern District of
New York and Joseph H. Hunt, Assistant
Attorney General, Civil Division, United
States Department of Justice, Washington,
D.C.

Appeal from a judgment of the United States District Court for the Northern District of
New York (Frederick J. Scullin, Jr., *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED** that the April 13, 2018 judgment of the District Court be and
hereby is **REVERSED IN PART**, **VACATED IN PART**, **AND REMANDED**.

Plaintiff-Appellant Charles Malmberg ("Malmberg") appeals from a judgment of the District
Court awarding him $5,488,680 in damages on his Federal Tort Claims Act ("FTCA") claim. The
Government cross-appeals, contending that the District Court made certain errors in calculating the
amount of damages. We assume the parties' familiarity with the underlying facts, the procedural
history of the case, and the issues on appeal.

I.

On September 15, 2006, Malmberg commenced this action under the FTCA, seeking to
recover damages for injuries he sustained in November 2004 during the course of an anterior
cervical discectomy and fusion procedure at the Syracuse Veterans Administration Medical Center.[1]
After bench trials on liability and damages, the District Court concluded that the Government is
liable for Malmberg's injuries and awarded $4,468,859.91 in damages. Both parties appealed various
aspects of the District Court's damages award.

---

[1] An anterior cervical discectomy and fusion involves removing a herniated or degenerative disc
in the cervical spine, along with any other matter that might be impinging on the spinal cord, and
replacing the removed disc with a bone graft.

In *Malmberg v. United States*, 816 F.3d 185 (2d Cir. 2016) ("*Malmberg I*"), we vacated the District Court's damages award. *Id.* at 188–89. As relevant here, we directed the District Court to reconsider whether Malmberg should be permitted to amend the *ad damnun* clause in his complaint to increase the amount of damages requested, and to explain its rationale for awarding $2 million in damages for Malmberg's past and future pain and suffering. *See id.* at 197, 199.

On remand, the District Court again denied Malmberg's motion to increase the *ad damnun*. *See Malmberg v. United States*, No. 5:06-CV-1042 (FJS/TWD), 2018 WL 1801958, at *8 (N.D.N.Y. Apr. 13, 2018). The District Court also concluded that, in light of its decision concerning the *ad damnun*, "there [was] no reason for the Court to address how the $2.5 million [sic[2]] award for past and future pain and suffering compares to awards in cases involving plaintiffs with comparable injuries because, even if the Court were to find that comparable cases warranted an increase, any such increase would be limited to a maximum of $511,320." *Id.* at *8 n.3. This appeal followed.

II.

The parties first contest whether the District Court clearly erred in denying Malmberg's request to increase the *ad damnun* from $6 million to $25 million. *See Malmberg I*, 816 F.3d at 196 (reviewing decision for clear error). We conclude that it did.

Before commencing an action in federal court, a putative FTCA claimant must first file a claim with the appropriate administrative agency. *See* 28 U.S.C. § 2675(a). "If the federal agency denies [or fails to act on] the claim," the claimant may proceed in federal court, "but the damages sought in such a lawsuit may not exceed the amount sought in the administrative claim." *Malmberg I*, 816 F.3d at 196. The FTCA contains two exceptions to this limitation: (1) "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency"; or (2) "upon allegation and proof of intervening facts . . . relating to the amount of the claim." 28 U.S.C. § 2675(b). In *O'Rourke v. Eastern Air Lines, Inc.,* we held that a motion to increase the *ad damnum* clause beyond what was claimed before the federal agency should only be granted when there is "some indication that the amount of the original claim was calculated on the basis of known facts at the time of the filing and that, subsequently, some new and previously unforeseen information came to light." 730 F.2d 842, 856 (2d Cir. 1984), *abrogated on other grounds by Salve Regina Coll. v. Russell,* 499 U.S. 225 (1991). Changes in a medical diagnosis can, in the proper circumstances, satisfy the § 2675(b) exceptions. *O'Rourke,* 730 F.2d at 856 (citing *Husovsky v. United States,* 590 F.2d 944, 955 (D.C. Cir. 1978) (unforeseen change in medical diagnosis that increased the claimant's predicted life span fit within FTCA's exceptions)).

---

[2] The District Court in fact awarded only $2 million in damages for past and future pain and suffering, not $2.5 million. *See Malmberg*, 2018 WL 1801958, at *8, 14.

Malmberg "bears the burden of demonstrating that one of the exceptions applies." *Malmberg I*, 816 F.3d at 196.

With respect to the first exception, for newly discovered evidence, Malmberg argues that the District Court clearly erred by ignoring the uncontested testimony of Dr. David Hunsinger—Malmberg's treating physician—that Malmberg's significant deterioration was not reasonably foreseeable on January 18, 2006, when Malmberg presented his claim for $6 million to the Veterans Administration. Specifically, Malmberg asserts that when he filed his administrative claim in January 2006, he was able to stand and ambulate with a walker, was able to walk up and down steps with a brace, and was "independent with all of his activities of daily living." J.A. 119–20. In contrast, by April 2011, Malmberg's condition had deteriorated so significantly that he was no longer able to stand or ambulate at all, due to the onset of osteoporosis, and he was largely dependent on home health aides. *Id.* at 294–95, 504. These deteriorated circumstances, he argues, have significantly increased the economic and pain and suffering damages to which he might be entitled.

Neither the Government nor the District Court contest that Malmberg's condition has seriously deteriorated since he filed his administrative claim in January 2006. But the District Court concluded, despite Dr. Hunsinger's unrebutted testimony to the contrary, that the record evidence "appear[s] to suggest that [Malmberg]'s severe deterioration was foreseeable at the time he filed his administrative claim." *Malmberg*, 2018 WL 1801958, at *5. The District Court relied on five pieces of evidence in the record to support its conclusion. We address each in turn.

The District Court noted that Malmberg admitted in his administrative claim that he was "left with paralysis involving all extremities" after the surgery, J.A. 442, and that Malmberg's proposed findings of fact acknowledge that he was "[d]iagnosed with C7 incomplete quadriplegia" after his surgery in 2004, J.A. 906. The fact that Malmberg knew he suffered from C7 incomplete quadriplegia that resulted in paralysis involving all extremities does not compel the conclusion that he reasonably should have known in January 2006 that, five years later, he would no longer be able to stand or ambulate.

The remaining record evidence on which the District Court relied consists of letters or testimony provided by Dr. Hunsinger *after* Malmberg filed his administrative claim. This evidence does not speak to whether Malmberg's deteriorated condition was reasonably discoverable before his administrative claim was filed on January 18, 2006. Indeed, the post-claim records that the District Court cited do not show that Malmberg's decline was reasonably foreseeable when the records were created. The June 15, 2006 and December 12, 2006 letters from Dr. Hunsinger state that Malmberg's mobility was "significantly impaired by his quadriplegia," he was "permanently completely disabled and unemployable," and he had "limited use of his legs" and anticipated the need for modifications to his home "to accommodate [a] scooter, walker, and wheelchair." J.A. 471–73, 1131. None of these statements show that it was reasonably foreseeable that Malmberg's condition would deteriorate such that he would no longer be able to stand or ambulate. If anything,

4

they show that Malmberg's condition was largely the same as when he filed his administrative claim, and it was anticipated that Malmberg would continue to be able to stand and ambulate, as evidenced by Dr. Hunsinger's statement that Malmberg would need modifications to his home to accommodate a walker. Finally, the last piece of evidence on which the District Court relied—a segment from Dr. Hunsinger's March 2012 deposition testimony, in which he states that Malmberg's condition can be expected to decline further over time, J.A. 290—has no bearing on whether continued decline was reasonably foreseeable six years earlier, let alone whether any foreseeable decline included the subsequent onset of osteoporosis so severe that he would be unable to stand or ambulate at all.

In contrast, there is evidence in the record—including the same documents the District Court cited—that corroborates Dr. Hunsinger's expert opinion that Malmberg's complete inability to stand or ambulate was not reasonably foreseeable at the time he filed his administrative claim. At the time of Malmberg's discharge on February 17, 2005, he was "independent with all of his activities of daily living," "independent with gait with a rolling walker 200 feet in a [brace]," and "was able to go up and down steps with bilateral hand rails and a [brace]." J.A. 119. As part of his physical therapy, he was instructed to ambulate with his walker and brace around his house. J.A. 120. In Dr. Hunsinger's June 15, 2006 letter—submitted six months after Malmberg filed his administrative claim—he noted that Malmberg was still "able to walk short distances with a walker." J.A. 465. Notes from a follow-up examination with Dr. Hunsinger on July 20, 2006, make no mention of any increased difficulty or inability to stand or ambulate. J.A. 467. In Dr. Hunsinger's December 12, 2006 letter—submitted almost a year after Malmberg filed his administrative claim— Dr. Hunsinger reported that Malmberg was still "able to walk with a walker" "[u]sing a left leg brace, and after many months of Physical Therapy and home exercise," despite having limited use of his legs. J.A. 472. A December 21, 2006 progress note confirms that Malmberg "remain[ed] ambulatory w[ith a] walker up to 500 [feet]," which is 300 feet more than Malmberg was able to walk when he was originally discharged in February of 2005. J.A. 475.

It was not until February 2007 that Malmberg's ability to stand and ambulate began to falter. J.A. 479 (progress note stating that Malmberg "has been doing worse since he was last seen in December 2006," and could now only ambulate "about 10 feet"). Malmberg's deterioration continued until June 12, 2009, when he was described as "essentially[ ] non-ambulatory," and only able to "take about 3 steps," which he had done only "about 10 times in the past year." J.A. 121–22; *see also* J.A. 483, 488–89, 496–97. In a February 17, 2010 letter, Dr. Hunsinger stated for the first time that Malmberg "will likely experience continued slow decline in function and the assistance needed to maintain independent living will increase over time," and that Malmberg would now need a power scooter for mobility because he was no longer able to walk with a walker. J.A. 128–29. Finally, in April 2011, Malmberg was diagnosed with osteoporosis and was deemed "not a candidate for standing and ambulation." J.A. 504.

In summary, according to the record evidence, there was no indication until February 2007 at the earliest that Malmberg's condition would deteriorate so that he was rendered completely unable to stand or ambulate. All of the records prior to January 2006 evidenced a likelihood that Malmberg would continue to be able to walk and stand for limited distances and durations with the assistance of a walker and brace. The fact that Malmberg was an incomplete quadriplegic and had limited use of his legs before filing his administrative claim does not mean that further deterioration of those abilities cannot qualify as newly discovered evidence if such deterioration was not reasonably discoverable in 2006. *See Michels v. United States,* 31 F.3d 686, 688–89 (8th Cir. 1994) ("[A] known injury can worsen in ways not reasonably discoverable by the claimant and his or her treating physician, and . . . such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant § 2675(b) relief."). Malmberg "should not be charged with knowing what the doctors could not tell him." *Fraysier v. United States,* 766 F.2d 478, 481 (11th Cir. 1985). Because Malmberg's significant deterioration and present inability to stand or ambulate constitutes an unforeseeable change in diagnosis, we concluded that he has satisfied the first § 2675(b) exception for newly discovered evidence. *See O'Rourke,* 730 F.2d at 856.

Accordingly, we reverse this aspect of the District Court's judgment and remand to the district court to determine anew the damages owed to Malmberg, taking into account an increased *ad damnum* of $25 million, which fixes the ceiling on the maximum recoverable damages.[3] In light of our conclusion, we do not address Malmberg's argument concerning the second § 2675(b) exception for intervening facts.

## III.

Malmberg next argues, and the Government agrees, that the District Court failed to explain sufficiently its award for past and future pain and suffering. In *Malmberg I*, we concluded that the District Court's cursory analysis of this aspect of the damages award "fail[ed] as a matter of law," and we remanded for it to "explain its rationale." 816 F.3d at 198–99. We agree with the parties that the District Court's decision declining to "address how the $2.5 million [sic] award for past and future pain and suffering compares to awards in cases involving plaintiffs with comparable injuries" because the potential "increase [in the damages award] would be limited to a maximum of $511,320," *Malmberg,* 2018 WL 1801958, at *8 n.3, does not comply with our direction in *Malmberg I*.

---

[3] Ordinarily, we might vacate and remand to the District Court to determine how much higher the *ad damnum* should be raised. But over the course of two appeals and multiple trial court submissions on the issue, the Government never argued that, even if the *ad damnum* clause were raised, it should be raised only to a certain, specific figure, and not the full $25 million that Malmberg requested in the motion now on appeal. We therefore grant Malmberg's motion to increase the *ad damnum* to the full $25 million requested, leaving to the District Court to determine the damages to which Malmberg is entitled now that the *ad damnum* has been raised.

We question the District Court's implication that revisiting the damages award is unnecessary because Malmberg has little to gain. Considering Malmberg's deteriorating condition, one might reasonably conclude that precisely the opposite is true—even under the old *ad damnum*, Malmberg could have received an additional $500,000, a significant sum. In any event, the District Court still has failed to explain adequately its initial award for past and future pain and suffering—the error we identified in *Malmberg I*. Moreover, in light of our decision to increase the *ad damnum* to $25 million, the District Court's minimal (and questionable) justification for not addressing the amount of damages for pain and suffering to which Malmberg is entitled is moot.

Accordingly, we vacate this aspect of the damages award and remand the cause to the District Court. On remand, the District Court is to consider whether its initial pain and suffering award complies with New York law and to explain the basis for its decision. In reviewing the award, the District Court should take into account, among other things, awards in comparable cases.

IV.

In its cross-appeal, the Government contends, and Malmberg does not dispute, that the District Court failed to correctly offset the damages award by the amount of disability payments Malmberg has received under 38 U.S.C. § 1151. We agree. We therefore vacate this aspect of the damages award and direct the District Court to offset the final award by the amount of § 1151 benefits that Malmberg receives through the date of any amended judgment entered on remand.

**CONCLUSION**

We have reviewed all of the remaining arguments raised by Malmberg on appeal and find them to be without merit. For the foregoing reasons, the April 13, 2018 judgment of the District Court is **REVERSED IN PART** and **VACATED IN PART**. The cause is **REMANDED** to the District Court for further proceedings consistent with this order.

In the interest of judicial economy, any further appeals in this case shall be referred to this panel.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court